UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

BRANDON KOMMER,

                     Plaintiff,

      -against-                           1:17-CV-296 (LEK/DJS)

FORD MOTOR COMPANY,

                     Defendant.

_____

**MEMORANDUM-DECISION AND ORDER**

**I.    INTRODUCTION**

      Plaintiff Brandon Kommer commenced this putative class action against defendant Ford

Motor Company pursuant to New York General Business Law ("N.Y. G.B.L.") sections 349 and

350. Dkt. No. 1 ("Complaint"). Presently before the Court is Ford's motion to dismiss. Dkt.

No. 5 ("Motion"); see also Dkt. No. 5-1 ("Memorandum"). Kommer opposes the Motion, Dkt.

No. 8 ("Response"), and Ford filed a reply, Dkt. No. 9 ("Reply"). For the reasons that follow, the

Court grants Ford's Motion.

## II.    BACKGROUND

### A.  Factual Background[1]

####     1.  *Plaintiff's Allegations*

In October 2015, Kommer purchased a 2015 Ford F-150 XLT Super Crew truck from New Country Ford in Saratoga Springs, New York. Compl. ¶ 5. Kommer decided to purchase his truck after seeing Ford's "Built Ford-Tough" advertisement on television and the Internet. Id. ¶¶ 22–25. Kommer also saw advertisements for the new redesigned Ford F-150. Id. ¶ 24.

 Soon after Kommer purchased his vehicle, however, he had problems with its doors and locks. Id. ¶¶ 26–27. Specifically, the front, rear, driver, and passenger-side doors would not latch closed and the electric locks would not open in below-freezing temperatures. Id. ¶¶ 27. Kommer claims that Ford's advertisements highlighting the F-150s durability and toughness suggest that the door handles would work in below-freezing temperatures. Id. ¶ 56. Since the door handles did not work, Kommer claims the advertisements were misleading. Id. ¶ 28.

Kommer also alleges that Ford knew of the problem with the door handles but failed to disclose it. Id. ¶¶ 29, 34. On April 8, 2015, Ford issued a technical service bulletin ("TSB") entitled "SUPERCAB/SUPERCREW CAB - FROZEN OR INOPERATIVE DOOR LATCH." Id. Ex. A. The TSB recognized that the door latches on some 2015 F-150 trucks did not work in freezing temperatures, and it outlined steps dealers should take to address the problem. Id.

---

[1] Because this case is before the Court on a motion to dismiss for failure to state a claim, the allegations of the Complaint are accepted as true and form the basis of this section. Boyd v. Nationwide Mut. Ins. Co., 208 F.3d 406, 408 (2d Cir. 2000); see also Matson v. Bd. of Educ., 631 F.3d 57, 72 (2d Cir. 2011) (noting that, in addressing a motion to dismiss, a court must view a plaintiff's factual allegations "in a light most favorable to the plaintiff and draw[] all reasonable inferences in her favor").

Plaintiff's truck—a 2015 F-150 SuperCrew Cab—was listed as an affected vehicle and was also identified as eligible for repair "Under Provisions Of New Vehicle Limited Warranty Coverage." Id. Despite issuing a TSB, Ford did not disclose the faulty door handle problem to current or potential F-150 owners. Id. ¶ 34. Kommer does not allege that he took his truck to get repaired or that it was not under warranty.

### 2. Allegations Relating To Proposed Class Members

Many of the allegations in the Complaint do not involve Plaintiff's own experience with his F-150. First, Kommer discusses a series of online advertisements from Ford's website. Id. ¶¶ 12–15. Kommer does not actually say he viewed these advertisements. Id. Kommer also identifies several comments posted in online forums where consumers complained about door handles getting stuck and not opening or unlocking in sub-freezing temperatures. Id. ¶¶ 17–21. Additionally, Kommer discusses a second TSB Ford issued on November 18, 2016. Id. Ex. B. This TSB replaced the initial TSB addressing the inoperative door latches in F-150 trucks. Id. While the first TSB covered only 2015 F-150s built before March 25, 2015, the second TSB covered all F-150 models from 2015 to 2017. Id. The second TSB also listed Plaintiff's car—a 2015 F-150 SuperCrew Cab—as eligible for repair "Under Provisions Of New Vehicle Limited Warranty Coverage." Id.

Kommer alleges that the TSBs did not address the faulty door handle problem and that consumers continued to experience problems with their door latches. Id. ¶ 43. In support of this allegation, he points to a consumer who complained in an online forum that he took his truck to the dealer for repairs and the dealer failed to fix the problem. Id. ¶ 44.

**B. Procedural Background**

Kommer filed his Complaint against Ford on March 13, 2017, alleging violations of N.Y.

G.B.L. sections 349 and 350. Id. ¶¶ 55–66. He brings forwards two claims: (1) Ford's "Built

Ford-Tough" advertising was an affirmative misrepresentation and (2) Ford failed to disclose to

consumer that the F-150 had defective door handles. Kommer also seeks to represent "himself

and a class of similarly-situated New York consumers who are current or former owners or

lessees of Ford F-150 vehicles for model years 2015–2017." Id. ¶ 1. On April 12, 2017, Ford

moved to dismiss Kommer's Complaint for failure to state a claim. Mem. at 9. Ford argues that

Kommer has failed to state a claim under N.Y. G.B.L. sections 340 and 350 because (1) Ford's

advertisements describing the quality and durability of its F-150s are non-actionable puffery, and

(2) Kommer has not alleged a legally cognizable injury. Mem. at 4, 7.

**III.    LEGAL STANDARD**

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure, a "complaint must contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678

(2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A court must accept as

true the factual allegations contained in a complaint and draw all inferences in favor of the

Plaintiff. Allaire Corp. v. Okumus, 433 F.3d 248, 249–50 (2d Cir. 2006). Plausibility, however,

requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of

[the alleged misconduct]." Twombly, 550 U.S. at 556. The plausibility standard "asks for more

than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing

Twombly, 550 U.S. at 556). "[T]he pleading standard Rule 8 announces does not require

'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (quoting Twombly, 550 U.S. at 555). Where a court is unable to infer more than the mere possibility of the alleged misconduct based on the pleaded facts, the pleader has not demonstrated that she is entitled to relief and the action is subject to dismissal. Id. at 678–79.

## IV.    DISCUSSION

N.Y. G.B.L. section 349 forbids "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in th[e] state," and section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in th[e] state." Both statutes contain a private cause of action. Id. §§ 349(h), 350(e)(3). To state a claim under either section 349 or 350, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered an injury as a result of the allegedly deceptive act or practice." Orlander v. Staples, Inc., 802 F.3d 289, 300 (2d Cir. 2015) (quoting Koch v. Acker, Merrall, & Condit Co., 967 N.E.2d 675, 675 (N.Y. 2012)). While section 349 does not require plaintiffs to show that they relied upon the misleading practice, section 350 does. Gershon v. Hertz Corp., 626 N.Y.S.2d 80, 81 (App. Div. 1995). Since both statutes contain the same elements, courts address section 349 and 350 claims together. See Tomasino v. Estee Lauder Cos., 44 F. Supp. 3d 251, 257–60 (E.D.N.Y. 2014); DeAngelis v. Timberpeg E., Inc., 858 N.Y.S.2d 410, 414 (App. Div. 2008).[2]

---

[2]   In his Complaint, Kommer refers to advertisements that he did not personally see and problems that unnamed plaintiffs had with their F-150s. Compl. ¶¶ 12–15, 17–21, 43–44. But in a proposed class action, the named plaintiffs "must allege and show that they personally have

### A. Affirmative Misrepresentation

Defendant argues that its "Built Ford-Tough" slogan is not misleading because it is non-actionable puffery. Mem. at 6. An advertisement is puffery when it "mak[es] [a] generalized or exaggerated statement[] such that a reasonable consumer would not interpret the statement as a factual claim upon which he or she could rely." Hubbard v. Gen. Motors Corp., No. 95-CV-4362, 1996 WL 274018, at *6 (S.D.N.Y. May 22, 1996) (quoting In re All Terrain Vehicle Litig., 771 F. Supp. 1057, 1061 (C.D. Cal. 1991)). Puffery is not actionable under section 349 or 350. See Fink v. Time Warner Cable, 810 F. Supp. 2d 633, 644 (S.D.N.Y. 2011) (noting that, under section 349 "[s]tatements and practices that are mere puffery are not actionable"). Courts can determine that a statement is puffery as a matter of law. Leonard v. Abott Labs., Inc., No. 10-CV-4676, 2012 WL 764199, at *21 (E.D.N.Y. Mar. 5, 2012).

Kommer alleges that he saw Ford's "Built Ford-Tough" advertisements on television, the Internet, and Facebook, and that he considered this advertisement when he decided to purchase his F-150. Compl. ¶ 22. Kommer further alleges that he had problems with the door handle as soon as he purchased his F-150. Id. ¶¶ 26–27. He claims that these problems "were directly contrary to the supposed toughness and durability claimed by Ford for its F-Series vehicles." Id. ¶ 28. Accordingly, Kommer claims that the Ford advertisements is likely to mislead a reasonable

---

been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." Warth v. Seldin, 422 U.S. 490, 502 (1975). Accordingly, in determining whether Kommer has plausibly stated a claim against Ford, the Court considers only the allegations relating to Kommer. Kommer may not rely on the injuries or allegations relating to members of the proposed class to survive a motion to dismiss. Roberts v. Weight Watchers Int'l, Inc., 217 F. Supp. 3d 742, 749 (S.D.N.Y. 2016).

consumer by giving the impression that the door handles will work in below-freezing temperatures. Id. ¶ 56.

In an analogous case, a plaintiff sued General Motors ("GM") after purchasing a Chevrolet Suburban with an allegedly "defective braking system." Hubbard, 1996 WL 274018, at *1. The plaintiff claimed that before purchasing his vehicle, he saw a series of advertisements describing the quality and dependability of the vehicle. Id. These advertisements described Chevrolet Suburbans as "the most popular family [vehicle] of their kind anywhere." Id. The advertisements also claimed that Chevrolet made the "most dependable, long-lasting trucks on the planet," and that their vehicles are "Like a Rock." Id. Plaintiff claimed that he reasonably relied on the advertisements when he decided to purchase his vehicle. Id. But he claimed that his reliance was "fraudulently induced," because the car did not perform as advertised due to the defective braking system. Id. The court dismissed the case on the ground that defendant's advertisements "constitute mere puffing," as they "are generalized and exaggerated claims, which a reasonable consumer could not rely upon as statements of fact." Id. at *7. The court also observed that the advertisements "make no reference whatsoever to . . . the . . . quality of the vehicles' braking system." Id.

Similarly, Ford's advertisements for the F-150 "make no reference whatsoever to . . . the quality of the vehicles' [door handles]." Id. The statement that Ford vehicles are "Built Ford-Tough" is an "exaggerated and generalized claim[]" similar to the advertisements determined to be puffery in Hubbard. Id. Morever, at least one court has explicitly held that Ford's "Built Ford-Tough" slogan is puffery. Warner v. Ford Motor Co., No. 06-CV-2443, 2008 WL 4452338, at *8 (D. Colo. Sept. 30, 2008) (holding that Ford's "Built Ford Tough" and "Quality is Job #1"

7

advertising slogans were puffery). Accordingly, the advertisements on which Kommer's affirmative misrepresentation claim is premised are non-actionable puffery, so that claim must be dismissed.

### B. Misrepresentation by Omission

Kommer's second theory of liability is that Ford's failure to disclose the problems with the door handles constitutes a violation of N.Y. G.B.L sections 349 and 350. Compl. ¶¶ 63–64. A failure to disclose—an omission—may form the basis of section 349 and 350 claims. See Szymczak v. Nissan N. Am., No. 10-CV-7493, 2011 WL 7095432, at *16 (S.D.N.Y. Dec. 16, 2011) ("An omission-based claim is actionable under section 349 . . . ."). To state an omission claim, a plaintiff must plausibly allege that a (1) business alone possessed material information and (2) failed to provide that information to consumers. Dixon v. Ford Motor Co., No. 14-CV-6135, 2015 WL 6437612, at *8 (E.D.N.Y. Sept. 30, 2015); Szymczak, 2011 WL 7095432, at *16 (citing Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, 647 N.E.2d 741, 745 (N.Y. 1995)). An omission is material if the business's failure to disclose is likely to mislead a reasonable consumer. Oswego Laborers' Local 214 Pension Fund, 647 N.E.2d at 745.

Ford argues that Kommer has not alleged a cognizable injury. Mem. at 7–8.[3] To show injury, a plaintiff must plead that the deceptive act caused actual injury. Canario v, Gunn, 751 N.Y.S.2d 310, 312 (App. Div. 2002). The injury need not be pecuniary harm, Stutman v. Chem. Bank, 731 N.E.2d 608, 612 (N.Y. 2000); Oswego Laborers' Local 214 Pension Fund, 647 N.E.2d at 744, but it cannot be the deception itself, Small v. Lorillard Tobacco Co., 720 N.E.2d 892, 898 (N.Y. 1999).

Kommer advances two theories of injury: (1) he incurred out-of-pocket costs to repair his F-150, and (2) he overpaid for a vehicle that had diminished value due to its defects. Compl. ¶ 58. Ford argues that Kommer has not incurred out-of-pocket expenses, and that he will not need to because his truck is still under warranty. Mem. at 8. Incurring out-of-pocket expenses is a recognized injury under N.Y. G.B.L sections 349 and 350. Marshall v. Hyundai Motor Am., 51 F. Supp. 3d 451, 465 (S.D.N.Y. 2014); In re Ford Motor Co. E-350 Van Prod. Liab. Litig. (No. II), No. 03-CV-4558, 2010 WL 2813788, at *71 (D.N.J. July 9, 2010). But where courts have recognized this injury, the plaintiffs specifically alleged that they incurred expenses in an attempt to repair the defective products. Compare Catalano v. BMW N. Am. LLC.,167 F. Supp. 3d 540, 547, 562 (S.D.N.Y. 2016) (finding that injury was adequately alleged where the plaintiff claimed that he "incurred nearly $2,000 in repair costs"); Tomassini v, FCA U.S. LLC, No.

---

[3]  Ford raises additional arguments for the first time in its Reply. Ford argues that Kommer has not identified a misleading nondisclosure and has not alleged causation. Reply at 4, 9. The Court will not consider these arguments because a defendant may not introduce arguments for the first time in its reply brief. Rowley v. City of New York, No. 00-CV-1793, 2005 WL 2429514, at *5–6 (S.D.N.Y. Sept. 30, 2005) (declining to consider arguments raised for the first time in the reply brief); Domino Media, Inc. v. Kranis, 9 F. Supp. 2d 374, 387 (S.D.N.Y. 1998) ("New arguments first raised in reply papers in support of a motion will not be considered." (emphasis omitted)).

14-CV-1126, 2015 WL 3868343, at *1 (N.D.N.Y. June 23, 2015) ("Plaintiff paid the repair shop $128.35 to replace the [defective part]."); Asghari v. Volkswagen Grp. of Am., Inc., 42 F. Supp. 3d 1306, 1332–33 (C.D. Cal 2013) ("[Plaintiff] allege[s] that the dealer performed "major engine repairs" on his vehicle, removing and replacing the engine's piston rings, in order to address the defect. Such repairs costs would also constitute cognizable injury under [N.Y.] GBL."); Doll v. Ford Motor Co., 814 F. Supp. 2d 526, 534, 549–550 (D. Md. 2011) (finding that plaintiffs adequately pleaded injury under N.Y. G.B.L. section 349 where they "were forced to replace the torque converter, transmission, and/or related parts at a cost of $1,000 to $3,000"), with OneBeacon Ins. Co. v. Freundschuh, No. 08-CV-823, 2010 WL 3091446, at *6 (W.D.N.Y. May 21, 2010) (finding that the plaintiff did not adequately allege injury because he did not suggest that he incurred costs), adopted by 2010 WL 3091222 (W.D.N.Y. Aug. 5, 2010).

Kommer alleges merely that he "incurred out-of-pocket costs to repair" his truck. Compl. ¶ 58. But in his Response, he readily admits that he has not personally expended any money to repair his vehicle. Resp. at 14. Kommer has thus not plausibly alleged that he incurred out-of-pocket expenses. Mahon v. McCall, No. 13-CV-2076, 2014 WL 4589855, at *3 (S.D.N.Y. Sept. 15, 2014) ("Plaintiff fails to allege any cognizable injury. Whether he claims that the mishandling of his legal mail delayed the state criminal court's receipt of his letter requesting additional time to file a *pro se* motion to set aside the verdict or the underlying motion itself, his opposition papers and the attachment thereto flatly contradict such allegations."); Schwartz v. Jamesway Corp., 660 F. Supp. 138, 139 n.1. (E.D.N.Y. 1987) (finding the plaintiff's earlier allegation withdrawn where it was contradicted by a different allegation in opposition papers).

Ford also argues that Kommer's price premium injury is insufficient. "[A] plaintiff who alleges that a deceptive practice caused him to pay more than the good or service he actually received was worth may be able to satisfy the injury requirement." Servedio v. State Farm Ins. Co., 889 F. Supp. 2d 450, 453 (E.D.N.Y. 2012); accord Ackerman v. Coca-Cola Co., No. 09-CV-395, 2010 WL 2925955, at *23 (E.D.N.Y. July 21, 2010). But if the defendant provides an adequate remedy for the problem, the plaintiff has not suffered an injury. See Preira v. Bancorp Bank, 885 F. Supp. 2d 672, 678 (S.D.N.Y. 2012) (finding no case "in which a court has held that a plaintiff sustained actual damages where a defendant has an unrestricted refund policy that fully compensated the plaintiff").

Kommer alleges that he overpaid for a product that has diminished value because of its defects. Compl. ¶ 58. But Kommer has a perfectly adequate remedy available to him, and that defeats his price-premium theory of injury. The TSB attached to his Complaint shows that the defective door handles are covered under warranty. Id. Ex. A.[4] The TSB—issued several months before Kommer purchased his truck—outlines how to fix the door handle problem and lists his truck—a 2015 F-150 Super Crew Cab—as an affected vehicle falling under "Provisions Of New Vehicle Limited Warranty Coverage." Id. Kommer has not suffered an injury if the defect can be repaired for free as part of the warranty. See In re Toyota Motor Corp. Hybrid Brake Mktg., Sales Practices & Prod. Liab. Litig., 915 F. Supp. 2d 1151, 1159 (C.D. Cal. 2013) (finding no injury under California law where the dealer fixed the defective brake system); Thiedemann v.

---

[4] The Court may consider exhibits attached to the complaint in deciding a motion to dismiss. Falso v. Ablest Staffing Servs., 328 F. App'x 54, 54 (2d Cir. 2009) ("In deciding a motion to dismiss, a court should consider only those facts alleged in the complaint or in documents attached to the complaint as exhibits . . . .").

Mercedes-Benz USA, LLC, 872 A.2d 783, 794 (N.J. 2005) (interpreting New Jersey law and finding that "defects that arise and are addressed by warranty, at no cost to the consumer, do not provide the predicate 'loss' that the [statute] expressly requires").[5] Kommer also suggests that Ford's attempts to fix the faulty door handles did not work. See Compl. ¶ 43 ("Despite issuing the two TSBs . . . Ford customers continue to experience the same problems."). If Ford was unable to fix the defect, then Kommer may have suffered a cognizable injury under N.Y. G.B.L sections 349 and 350. See Dixon v. Ford Motor Co., No. 14-CV-6135, 2015 WL 6437612, at *2 (E.D.N.Y. Sept. 30, 2015) ("[P]laintiff alleges that the procedures outlined in the TSBs fail to repair the exhaust odor problem and vehicles that have received the repairs outlined in the TSBs may continue to have exhaust and carbon monoxide enter the passenger compartment."). But the Court does not need to decide this issue because Kommer does not allege that he actually experienced these problems. Accordingly, the Court must dismiss Kommer's omission claim for failure to plausibly plead an injury.

### C.  Leave To Amend

"It is the usual practice upon granting a motion to dismiss to allow leave to replead." Cortec Indus. Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991). "Of course, where a plaintiff is unable to allege any fact sufficient to support [her] claim, a complaint should be dismissed with prejudice." Id.

---

[5] There is no allegation that Kommer's F-150 was actually under warranty when the defect originated. But relying on "judicial experience and common sense," Iqbal, 556 U.S. at 679, the Court finds it implausible that the F-150 was not under warranty at this time. Kommer complained that the door handles failed to work "from the very outset," Compl. ¶ 26, and it is implausible that his brand new F-150 did not include a warranty or that his warranty expired so soon after he purchased his vehicle. But if Kommer's F-150 was not under warranty when the defect originated, Kommer may amend his complaint to allege that.

The deficiency with Kommer's affirmative misrepresentation claim is substantive in nature. Thus, amendment of this claim would be futile. See Henry v. Davis, No. 10-CV-7575, 2011 WL 5006831, at *3 (S.D.N.Y. Oct. 20, 2011) ("Where a complaint has substantive problems, which a better pleading will not cure, granting leave to replead is futile."). But the Court finds that Kommer could allege facts to support his misrepresentation-by-omission claim. For example, Kommer may be able to allege that he incurred expenses to get his car repaired or that Ford's attempts to fix the repairs failed. Accordingly, the Court will grant Kommer leave to file an amended complaint to address the deficiencies with his omission claim. See Orion Elec. Co. v. Funai Elec. Co., No. 01-CV-3501, 2002 WL 377541, at *8 (S.D.N.Y. Mar. 11, 2002) ("The dismissed claims are not futile. Plaintiffs may or may not be able to plead the facts necessary to state a claim.").

## V.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Ford's motion to dismiss (Dkt. No. 5) is **GRANTED**; and it is further

**ORDERED**, that Kommer's affirmative misrepresentation claim is **DISMISSED without leave to amend**; and it is further

**ORDERED**, that Kommer's misrepresentation-by-omission claim is **DISMISSED with leave to amend**; and it is further

**ORDERED**, that if Kommer wishes to proceed with his misrepresentation-by-omission claim, he must file an amended complaint as set forth above within **thirty days** of the filing date of this Memorandum-Decision and Order; and it is further

13

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:      July 28, 2017
            Albany, New York

Lawrence E. Kahn
U.S. District Judge