UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

|  |  |  |
|---|---|---|
| BRANDON KOMMER on behalf of himself and all others similarly situated, | : : : | Civil Action No.: 17-cv-296 LEK/DJS |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| -against- | : |  |
|  | : |  |
| FORD MOTOR COMPANY, | : |  |
|  | : |  |
| Defendant. | : |  |

_____

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS COMPLAINT**

Jeffrey I. Carton, Esq.
Robert J. Berg, Esq.
Myles K. Bartley, Esq.
DENLEA & CARTON LLP
2 Westchester Park Drive, Suite 410
White Plains, New York  10604
(914) 331-0100
jcarton@denleacarton.com
rberg@denleacarton.com
mbartley@denleacarton.com

*Attorneys for Plaintiff Brandon Kommer*

**Table of Contents**

PRELIMINARY STATEMENT ................................................................................... 1

FACTS AND PROCEDURAL HISTORY .............................................................. 1

     Ford Issues First Technical Services Bulletin ..................................................... 2

     Ford Fails To Disclose Existence of Technical Services Bulletin ......................... 3

     Ford Issues Second Technical Services Bulletin ................................................. 4

     Mr. Kommer's Vehicle Continues To Malfunction .............................................. 4

     Procedural History ................................................................................................ 6

ARGUMENT .......................................................................................................... 6

    I.     Plaintiff Has Adequately Alleged Section 349 and 350 Claims ................. 6

    II.    Ford Rehashes Its Prior Arguments ........................................................... 8

    III.   Even If The Court Reconsiders Ford's
         Arguments, The Result Should Be The Same ........................................... 9

CONCLUSION ..................................................................................................... 15

i

## Table of Authorities

**Cases**

*Alban v. BMW of N. Am., LLC*
  No. 09-5398, 2011 U.S. Dist. LEXIS 26754 (D. N.J. Mar. 15, 2011) ............... 9, 10, 11

*Bergerson v. N.Y. State Office of Mental Health*
  652 F.3d 277 (2d Cir. 2011) ........................................................................... 9

*Cox v. Chrysler Grp., LLC*
  No. 14-7573, 2015 U.S. Dist. LEXIS 133393 (D. N.J. Sept. 30, 2015) ................ 12, 13

*Darne v. Ford Motor Co.*
  No. 13-CV-03594 (N.D. Ill, Sept. 1, 2017) ......................................................... 11, 13

*Davisson v. Ford Motor Co.*
  No. 2:13-CV-456, 2014 U.S. Dist. LEXIS 122673 (S.D. Ohio Sept. 3, 2014) ... 9, 10, 11

*Gaidon v. Guardian Life Ins. Co. of Am.*
  94 N.Y.2d 330, 725 N.E.2d 598, 1999 N.Y. LEXIS 3932, 704 N.Y.S.2d 177 (1999) .. 10

*Glass v. BMW of N. Am., LLC*
  No. 10-53259, 2011 U.S. Dist. LEXIS 149199 (D. N.J. Dec. 29, 2011) .................. 9, 10

*In re MyFord Touch Consumer Litig.*
  46 F. Supp. 3d 936 (N.D. Cal. 2014) .................................................................. 12, 13

*Johnson v. Harley-Davidson Motor Co. Grp., LLC*
  285 F.R.D. 573 (E.D. Cal. 2012) ........................................................................ 12

*Majdipour v. Jaguar Land Rover N. Am., LLC*
  No. 2:12-cv-07849, 2013 U.S. Dist. LEXIS 146209 (D. N.J. Oct. 9, 2013) ................ 12

*Munch v. Sears Roebuck & Co.*
  No. 06 C 7023, 2007 U.S. Dist. LEXIS 62897 (N.D. Ill. Aug. 27, 2007) .............. 13, 14

*Ndremizara v. Swiss Re Am. Holding Corp.*
  93 F. Supp. 3d 301 (S.D.N.Y. 2015) .................................................................. 8, 9

*Neuser v. Carrier Corp.*
  No. 06-C-645-S, 2007 U.S. Dist. LEXIS 9663 (W.D. Wis. Feb. 9, 2007) ............. 13, 14

*Pelman v. McDonald's Corp.*
  396 F.3d 508 (2d Cir. 2005) ............................................................................. 10

*Thiedemann v. Mercedes-Benz USA, LLC*
  872 A.2d 783 (N.J. 2005) ................................................................................. 13, 14

**Other Authorities**

CONSUMER REPORTS (Apr. 3, 2014) ......................................................................... 11

Fed. R. Civ. P. 8(a) ................................................................................................. 10, 11

Fed. R. Civ. P. 9(b) ................................................................................................. 10, 12

N.Y. GEN. BUS. LAW §349 ....................................................................................passim

N.Y. GEN. BUS. LAW §350 ....................................................................................passim

National Highway Traffic Safety Act, 49 U.S.C. § 30116(a) ............................ 13, 14, 15

National Highway Traffic Safety Act, 49 U.S.C. § 30118(c).............................. 13, 14, 15

National Highway Traffic Safety Act, 49 U.S.C. § 30120(a) ............................ 13, 14, 15

Plaintiff, Brandon Kommer, by and through his counsel, Denlea & Carton LLP, hereby submits his Memorandum of Law in Opposition to Defendant's Motion to Dismiss Plaintiff's First Amended Class Action Complaint.

## PRELIMINARY STATEMENT

This Court has previously concluded that Mr. Kommer "may have suffered a cognizable injury under N.Y. GBL section 349 and 350," and that his consumer fraud claims will be sustained if sufficient facts are alleged to support his misrepresentation-by-omission claim.  Specifically, the Court explained that such a claim could be established by pleading that "Ford's attempts to fix the repairs failed."  Following the Court's prior ruling, Mr. Kommer set forth in his First Amended Complaint ("FAC") detailed allegations that Ford's attempts to fix his defective latches failed no fewer than five (5) times.  Because Ford's current motion simply seeks to retread arguments that were previously advanced (and rejected), it should be swiftly turned aside and the action permitted to proceed to discovery.

## FACTS AND PROCEDURAL HISTORY

The Court's familiarity with this matter is presumed, as reflected in its previous ruling upon Defendant's initial motion to dismiss.  Succinctly stated, Mr. Kommer seeks redress, on his own behalf and on behalf of current and former owners or lessees of Ford F-150 vehicles for model years 2015-17, for the economic injury caused by Ford's failure to inform consumers about a material defect with these vehicles; specifically, that their doors will not lock and latch properly when the temperature drops below freezing.

Ford quietly issued not one, but two, proprietary technical service bulletins to dealership service technicians to address the problem.  (FAC at ¶ 3.)  Technical service

bulletins (TSB's) are notices sent to dealership service departments, alerting them as to a problem with a vehicle, yet without notifying the public or going through the expense of a recall.  (*Id.*)  Despite two TSBs on this precise defect, Ford was unable to correct the problem.  (*Id.*)   Plaintiff went to the dealer five (5) times to fix the defective latch, all to no avail.  (*Id.*)  Ford is no stranger to door latch defects and the FAC details Ford's prior problems in this area.  (FAC at ¶ 4.)

### Ford Issues First Technical Services Bulletin

As early as April 8, 2015, months before Mr. Kommer purchased his Ford F-150, Ford knew that some "2015 F-150 SuperCab and SuperCrew Cab vehicles built on or before 3/25/2015 may exhibit inoperative door latches during or after freezing temperatures."  (FAC at ¶ 31 (quoting TSB).)  Ford's TSB outlined the serious issue of inoperable door latches during and after freezing temperatures, the action needed to be taken by Ford's dealers and service providers, and the specific service procedure to fix the defect (though, as alleged, the "fix" doesn't work).  (FAC at ¶ 32.)  In stark contrast, Ford provided no disclosure of the defect to current, former, or potential owners, purchasers, or lessees of these F-150 vehicles.  (*Id.*)

Ford's F-150 customers continued to experience the same problems throughout 2015, 2016, and 2017 with Ford's 2015-17 F-150 vehicle models.  (FAC at ¶ 34.) Despite the problems, Ford never made any affirmative disclosure about the problems outlined in its April 2015 TSB.  (FAC at ¶ 35.)  Instead, Ford concealed the defect, did nothing to retrofit the doors with new equipment; made no design modifications; issued no recall; and continued to mislead the public with claims of quality and durability – both noticeably absent from the product.  (*Id.*)  Significantly, Ford's dealers (in this case New

2

Country Ford), once alerted about a product defect through its TSB, had the ability, if not the duty, to remedy those defects on those vehicles it possessed or would pass into the throat of commerce.  It did not do so and sold Plaintiff a vehicle with a known defect.

**Ford Fails To Disclose Existence of Technical Services Bulletin**

Even though the first TSB was issued in April 2015, months before Mr. Kommer purchased his vehicle on October 14, 2015, Mr. Kommer was never informed about the fact that "2015 F-150 SuperCab and SuperCrew Cab vehicles built on or before 3/25/2015 may exhibit inoperative door latches during or after freezing temperatures." (FAC at ¶ 36.)  Ford's omission, specifically the failure to inform Mr. Kommer of the defect, is material and if it had been disclosed to Mr. Kommer, would have resulted in him purchasing a different vehicle.  (*Id.*)  Now disclosed in the press, in social media and in court files, the knowledge will similarly deter any prospective purchaser from buying this truck, resulting in a diminished value to the truck, for which plaintiff paid full price. (*Id.*)

From the outset, right after Mr. Kommer purchased his vehicle, Mr. Kommer personally experienced multiple failures of his new vehicle's doors and locks to latch when temperatures fell below freezing.  (FAC at ¶ 27.)  Just one week after purchasing the vehicle, Mr. Kommer experienced difficulty opening his driver's side rear door.  (FAC at ¶ 37.)  Although he returned to the Ford dealer to allow the dealer to try and fix the defect, the dealer was unable to do so.  (*Id.*)  And more egregiously, the dealer failed to notify him of the nearly six month old TSB.  (*Id.*)

Mr. Kommer brought his vehicle back to the dealer two more times that winter (January 14, 2016 and February 2, 2016), both times as a result of the doors' failure to

3

latch shut (the driver's side door in January, the passenger side rear door in February), and again Mr. Kommer was never told about the existing TSB.  (FAC at ¶ 38.)  Both times the dealer tried to fix the defect and after each purported "fix," the problem recurred.  (*Id.*)

### Ford Issues Second Technical Services Bulletin

The continued malfunction of the latches in Ford's 2015-2017 F-150 vehicle models resulted in Ford issuing yet another TSB.  (FAC at ¶ 39.)  On November 18, 2016, Ford issued a broader and more detailed TSB (TSB 16-0155) to its dealers and service providers in an attempt to "fix" its ongoing problem.  (FAC at ¶ 40.)  This second TSB was not limited to the 2015 F-150 SuperCab and SuperCrew models built before March 25, 2015, but was expanded to include all F-150 models for all of 2015, 2016, and 2017.  (FAC at ¶ 43.)  TSB 16-0155 explained that "Some 2015-2017 F-150 vehicles may exhibit inoperative latches on front doors and/or SuperCrew rear doors during freezing temperatures." (FAC at ¶ 44.)

Even after issuing this second, and broader, TSB, Ford still failed to disclose this serious defect or to inform current, former or potential Ford F-Series owners, purchasers, or lessees of this defect.  (FAC at ¶ 46.)

### Mr. Kommer's Vehicle Continues To Malfunction

Because Ford never disclosed this material defect, Mr. Kommer, and consumers like him, continued to experience the same problems, and only after bringing it to a dealer could they potentially learn that this was a long-standing problem.  (FAC at ¶ 48.)

On December 29, 2016, for the fourth time, Mr. Kommer brought his vehicle back to the dealer complaining about the same problem.  (FAC at ¶ 49.)  Again, Mr.

4

Kommer's driver's side door would not open properly and failed to latch shut when the outside temperature fell below freezing.  (*Id.*)  Mr. Kommer even provided a video of the door's failure to his dealer.  (*Id.*)  Only at this point did his dealer inform Mr. Kommer of the second TSB (it never informed him of the first TSB) and the dealer's need to order parts to effectuate the supposed repair.  (FAC at ¶ 50.)

On February 14, 2017, Mr. Kommer brought his vehicle back to the dealer for the dealer to perform the repair outlined in TSB 16-0155.  (FAC at ¶ 51.)  The "repair" was supposedly completed on February 16, 2017.  (*Id.*)  Less than two weeks later, on February 27, 2017, Mr. Kommer's vehicle's driver's side door was frozen and would not open properly.  (FAC at ¶ 52.)  Once it was opened, it would not stay shut. Mr. Kommer documented this defective door in a video.  (*Id.*)

In sum, Mr. Kommer brought his vehicle to the dealer for latch repairs five times, but those repairs never worked.  (FAC at ¶ 53.)  On October 21, 2015, he brought the vehicle in for a repair.  (*Id.*)  The service notation read "check door handle operation. Ok."  (*Id.*)  It was not.  (*Id.*)  On January 14, 2016, Mr. Kommer returned with the same latch defect.  (FAC at ¶ 54.)  The New Country Ford technician wrote "reinstall door panel and check operation. Ok."  (*Id.*)  It was not.  (*Id.*)  On February 3, 2016, Mr. Kommer returned to New Country Ford.  (FAC at ¶ 55.) The same "opcode" was typed saying the latch was "OK."  (*Id.*)  It was not.  (*Id.*)  On December 29, 2016, Mr. Kommer returned to New Country Ford, this time with a video of the latch defect.  (FAC at ¶ 56.) This time the invoice read "vehicle operating as designed."  (*Id.*)  This much was true, but the irony was lost on the dealer.  (*Id.*)  The latch was not fixed.  (*Id.*)  On February 14, 2017, Mr. Kommer brought the vehicle into New Country Ford for a fifth time.  (FAC

at ¶ 57.)  This time, realizing that all credibility had been lost, at least the technician did not claim the latch was repaired.  (*Id.*)  By this point, the technician realized the latch was designed to fail and the technician only stated it was "operating as designed."  (*Id.*)

As a result of Ford's failure to inform consumers about the defect in its F-150 vehicles, consumers have been injured by over paying for a product that has diminished value due to its defective nature.  (FAC at ¶ 6.)  If the Plaintiff had known what prospective subsequent purchasers now know, he would never have purchased the vehicle.  (*Id.*)  And those prospective subsequent purchasers, now knowing of the defect, will either not purchase the vehicle or will offer a steeply discounted price, all of which constitutes a diminution of value and damage to the Plaintiff.  (*Id.*)

## Procedural History

Ford moved to dismiss Mr. Kommer's complaint on April 19, 2017.  After the parties fully briefed the motion, the Court issued an order on July 28, 2017, dismissing Mr. Kommer's complaint, but granting him leave to replead.  Mr. Kommer timely filed his First Amended Complaint on August 28, 2017.  Ford moved to dismiss the FAC on September 14, 2017.

## ARGUMENT

### I.    Plaintiff Has Adequately Alleged Section 349 and 350 Claims

In its prior order, the Court granted Ford's motion to dismiss Mr. Kommer's complaint.  *Kommer v. Ford Motor Co.*, No. 1:17-CV-296 (LEK/DJS), 2017 U.S. Dist. LEXIS 118335 (N.D.N.Y. July 28, 2017).  The Court found that Mr. Kommer's affirmative misrepresentation claim was "premised on non-actionable puffery," and that his "omission claim . . . fail[s] to plausibly plead an injury."  *Id.* at *9, 13.  In reaching its decision, the Court considered, but did not adopt, Ford's other arguments, *inter alia*, that

6

Mr. Kommer failed to allege that Ford was in exclusive possession of material

information and failed to disclose that information to consumers, and that such

disclosure would be meaningless.  (*See, e.g.*, Mem in Supp. of Mot. to Dis. (Dkt. No. 5)

at 7; Reply Mem. in Supp. of Mot. to Dis. (Dkt. No. 9), at 4-9.)

The Court, however, did not dismiss the complaint with prejudice; rather the

Court granted Mr. Kommer leave to replead his omissions-based claims and then

explained how an omissions-based claim could be alleged adequately.  *Kommer*, 2017

U.S. Dist. LEXIS 118335, at *9-14.  After laying out the standard for an omissions-based

claim, the Court applied the law to Mr. Kommer's alleged facts and concluded that if

"Ford was unable to fix the defect, then Kommer may have suffered a cognizable injury

under N.Y. GBL section 349 and 350."  *Id.* at *13.  In granting Mr. Kommer leave to

replead, the Court concluded that "the Court finds that Kommer could allege facts to

support his misrepresentation-by-omission claim.  For example, Kommer may be able to

allege that . . . Ford's attempts to fix the repairs failed."  *Id.* at *14.  Remarkably, Ford's

motion to dismiss addresses neither the Court's prior analysis, nor Plaintiff's compliance

therewith.

Following the Court's ruling, Mr. Kommer filed his FAC and alleged omissions-

based claims that assert that Ford has failed to fix Mr. Kommer's vehicle, despite Mr.

Kommer bringing it back to the dealer for repairs on five separate occasions.  (*See, e.g.*,

FAC at ¶¶ 49-57.)  None of these five trips "fixed" the problem even though the dealer

supposedly applied the current TSB procedures.  (*Id.*)  Indeed, after servicing Mr.

Kommer's vehicle for the fifth time for the exact same problem, and after supposedly

applying the "fix" outlined in Ford's two separate TSBs, even the service technician no

longer claimed Mr. Kommer's vehicle was "repaired," only that it was "operating as designed." (FAC at ¶ 57.) That, unfortunately, is the problem. The FAC thus plainly sets forth that Ford was unable to fix the defect.

Nowhere in Ford's motion to dismiss does Ford address the Court's earlier discussion of how Mr. Kommer might adequately plead an omissions-based Section 349 or 350 claim. Similarly, Ford's motion to dismiss does not address, because it cannot, how the FAC does not comply with this Court's previous holding. Accordingly, the Court should deny Ford's motion to dismiss.

## II.      Ford Rehashes Its Prior Arguments

In its current motion to dismiss, Ford repeats the same arguments it previously advanced, incorrectly arguing that the FAC has not adequately alleged that Ford had exclusive knowledge of the vehicle's defects and that disclosing every defect in the vehicle would render Ford's disclosures meaningless. (*Compare* Mem in Supp. of Mot. to Dis. (Dkt. No. 5) at 7 *and* Reply Mem. in Supp. of Mot. to Dis. (Dkt. No. 9), at 4-5, *with* Mem. in Supp. of Mot. to Dis. (Dkt No. 12-1) at 2-5.) This Court has previously considered these same arguments when it decided Ford's first motion to dismiss. *Kommer*, 2017 U.S. Dist. LEXIS 118335, at *9-14 (finding only that affirmative misrepresentations were non-actionable puffery and plaintiff failed to allege injury adequately to state omissions-based Section 349 and 350 claims).

Because this Court has already considered, and did not adopt, Ford's identical arguments, the law-of-the-case doctrine precludes their relitigation in this motion. *Ndremizara v. Swiss Re Am. Holding Corp.*, 93 F. Supp. 3d 301, 315 (S.D.N.Y. 2015) ("Defendant's attempt to relitigate this issue runs into the law-of-the-case doctrine. Under that doctrine, a court, as a general matter will adhere to its own decision at an

8

earlier stage of the litigation . . . Defendant gives no reason for overturning the Court's

prior ruling other than mere disagreement with the Court's analysis." (internal quotations

and citations omitted)); *accord Bergerson v. N.Y. State Office of Mental Health*, 652

F.3d 277, 288-89 (2d Cir. 2011) (holding "there is a strong presumption against

amendment of prior orders" and explaining that a prior order usually may not be

changed unless there is an intervening change of controlling law, the availability of new

evidence, or the need to correct a clear error or prevent a manifest injustice) (internal

quotations and citations omitted)).  Ford has not identified any: (1) intervening change of

controlling law; (2) the availability of new evidence; or (3) the need to correct a clear

error or prevent a manifest injustice.  Nor does Ford contend that this Court overlooked

or failed to consider these same arguments.  Accordingly, this Court should not

reconsider its prior order and it should deny Ford's motion.  *See Bergerson*, 652 F.3d at

288-89; *Ndremizara*, 93 F. Supp. 3d at 315.

## III.    Even If The Court Reconsiders Ford's Arguments, The Result Should Be The Same

If the Court did reconsider Ford's recycled arguments (and, respectfully, it should

not), it should still reach the same conclusion and deny Ford's motion to dismiss.  First,

Ford's cited authority does not support the conclusion that knowledge is not adequately

alleged for a Section 349 and 350 claim.  Relying on three cases, Ford claims this

authority stands for the proposition that "'more is required to plead knowledge' than a

single TSB standing alone."  *See Glass v. BMW of N. Am., LLC*, No. 10-53259, 2011

U.S. Dist. LEXIS 149199 (D. N.J. Dec. 29, 2011); *Davisson v. Ford Motor Co.*, No. 2:13-

CV-456, 2014 U.S. Dist. LEXIS 122673 (S.D. Ohio Sept. 3, 2014); *Alban v. BMW of N.

Am., LLC*, No. 09-5398, 2011 U.S. Dist. LEXIS 26754 (D. N.J. Mar. 15, 2011).  But

these cases are readily distinguishable and do not support dismissal of Mr. Kommer's

GBL §§ 349 and 350 claims.

First, *Glass* is inapposite because it does not involve the existence of a TSB and

whether its existence evidences defendant's knowledge of an alleged defect.  *Glass v.*

*BMW of N. Am., LLC*, No. 10-53259, 2011 U.S. Dist. LEXIS 149199 (D. N.J. Dec. 29,

2011).  Second, none of these cases address the specifics of a Section 349 or 350

claim, but instead address the elements of other States' consumer fraud claims.  *Id.*  In

addition, these cases all apply Federal Rule of Civil Procedure 9(b) and its heightened

pleading standard.  *Davisson*, 2014 U.S. Dist. LEXIS 122673 at *26 ("Plaintiffs have

failed to meet the heightened pleading requirements of Rule 9(b)."); *Alban*, 2011 U.S.

Dist. LEXIS 26754 at *14 ("With respect to Mr. Alban's consumer fraud claim, the Court

held that he had not meet the heightened pleading standard of Federal Rule of Civil

Procedure 9(b)."); *Glass*, 2011 U.S. Dist. LEXIS 149199 at *11 (same).  As the Second

Circuit has explained, however, Rule 9(b) does not apply to a Section 349 claim or 350

claim.  *See Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005).  In holding

that a lesser pleading standard was appropriate for a Section 349 claim, the court

reasoned that:

> because § 349 extends well beyond common-law fraud to
> cover a broad range of deceptive practices, *see Gaidon v.*
> *Guardian Life Ins. Co. of Am.*, 94 N.Y.2d 330, 343, 725
> N.E.2d 598, 1999 N.Y. LEXIS 3932, 704 N.Y.S.2d 177
> (1999), and because a private action under § 349 does not
> require proof of the same essential elements (such as
> reliance) as common-law fraud, an action under § 349 is not
> subject to the pleading-with-particularity requirements of
> Rule 9(b), Fed. R. Civ. P., but need only meet the bare-
> bones notice-pleading requirements of Rule 8(a) . . .

*Id.*  Mr. Kommer's detailed FAC more than meets the bare-bones notice-pleading requirements of Rule 8(a).

Finally, the *Alban* case, upon which the *Davisson* court relies, does not hold that an allegation of a TSB is insufficient evidence to allege knowledge.  *Alban*, 2011 U.S. Dist. LEXIS 26754 at *36.  There, the *Alban* court found that the contents of the TSB were sufficiently generalized that the court could not conclude from the TSB that BMW knew the issue plaintiffs complained about would manifest after the expiration of the warranty period.  *Id.*  As a result, the court then concluded that it would not treat TSBs as "potential admissions of fraudulent concealment."  *Id.*  Here, in contrast, the TSBs are specific and adequately demonstrate that Ford knew that the latches did not function properly; indeed the second TSB is a ratification of its knowledge addressed in the first TSB.  Additionally, at this point, the TSBs are not being presented as potential admissions at trial, where the trial judge will make the appropriate evidentiary ruling. (*See, e.g.*, FAC at Exs. A ("Some 2015 F-150 SuperCab and SuperCrew Cab vehicles built on or before 3/25/2015 may exhibit inoperative door latches during or after freezing temperatures") & B ("Some 2015-2017 F-150 vehicles may exhibit inoperative latches on front doors and/or SuperCrew rear doors during freezing temperatures").)[1]; *see also*

---

[1] Ford also cites to an unreported out-of-district case, *Darne v. Ford Motor Co.*, No. 13-CV-03594 (N.D. Ill, Sept. 1, 2017), for the proposition that because TSBs are public documents, "they cannot constitute exclusive knowledge for the manufacturer."  (Mem. in Supp. of Mot. to Dis. (Dkt No. 12-1) at 4.)  *Darne* does not support that proposition, as it instead held that Ford's issuance of a TSB and a recall (something Ford has refused to do in this case) refuted the allegation that Ford had <u>concealed</u> information.  *Id.* at 25. Moreover, the TSBs are not public documents. *See* "Massive GM recall reveals benefits of obtaining technical service bulletins, The alerts can help you save money and might reveal safety issues with your car," CONSUMER REPORTS (Apr. 3, 2014) (available at: https://www.consumerreports.org/cro/news/2014/04/technical-service-bulletins-how-to-find-and-use-tsbs/index.htm, last visited Sept. 25, 2017) (detailing steps necessary to find TSBs, if available).  They are proprietary documents issued by the manufacturer to its dealers and service technicians to provide guidance on how to address recurrent problems.  That some TSBs may find their way into the public domain does not make them public documents and the *Darne* court provided no basis for its conclusion that they are public documents.  Further, multiple courts have found that "even the presence of

11

*Majdipour v. Jaguar Land Rover N. Am., LLC*, No. 2:12-cv-07849, 2013 U.S. Dist.

LEXIS 146209, at * 51-52 (D. N.J. Oct. 9, 2013) ("Even if there is a public policy

rationale for excluding TSBs as evidence of a defect or an admission of liability, the

Court will not now stretch that rationale to raise the bar that Plaintiffs must meet at the

pleading stage . . .").

      Moreover, multiple courts have reached an opposite conclusion from Ford's cited

authority and, respectfully, provide the more reasoned approach.  *See, e.g.*, *Cox v.*

*Chrysler Grp., LLC*, No. 14-7573, 2015 U.S. Dist. LEXIS 133393, at *41 n.7 (D. N.J.

Sept. 30, 2015) ("Plaintiffs allege that the defects are present in the factory-installed

sunroofs across many models spanning multiple years. Therefore, the TSBs buttress

Plaintiffs' assertion that Chrysler was aware of the defects that resulted from some error

in its manufacturing process. In light of the fact that knowledge can be alleged generally

under Federal Rule of Civil Procedure 9(b), the TSBs allow for the inference that

Defendant knew that some of the Class Vehicles would leak, and Defendant concealed

or failed to disclose the defect that caused the problem."); *In re MyFord Touch*

*Consumer Litig.*, 46 F. Supp. 3d 936, 960 (N.D. Cal. 2014) (finding Ford had knowledge

of defect with the MyFord Touch ("MFT") "infotainment system" prior to issuance of

TSB, reasoning "Ford should have known of problems with MFT by around 2011, *i.e.*,

---

information online does not automatically defeat exclusive knowledge . . . [as] exclusivity is analyzed in part by determining whether the defendant has superior knowledge." *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 960 (N.D. Cal. 2014); *Johnson v. Harley-Davidson Motor Co. Grp., LLC*, 285 F.R.D. 573, 583 (E.D. Cal. 2012) ("[s]ince Defendant was in a superior position to know of its defective engines, Plaintiffs properly allege that Defendant had exclusive knowledge of material facts not known to Plaintiffs."). Further, even if a consumer was aware of a problem, "that does not establish that either the public or Plaintiffs knew or should have known of the severity of the problems, including the fact that the problems could not be fixed. (as alleged by Plaintiffs)." *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d at 960. Here, there can be little doubt that Ford was in a superior position to know of its defective latches, that Mr. Kommer did not know of the proprietary TSBs prior to purchasing his vehicle, and that he did not know that Ford's supposed "fixes" would not work.

before it could recommend what repairs or updates needed to be done.  Presumably,

the TSBs and updates were proceeded by an accretion of knowledge by Ford." citing

cases).  Just like Chrysler in *Cox* and Ford in *MyFord*, it is reasonable to infer that Ford

had an evolving awareness of the defective door locks and latches prior to Ford's

issuance of the two TSBs.  (*See also* FAC at ¶¶ 2, 3, 5.)

      Finally, Ford argues that because there is a warranty, it is absolved from

disclosing material information from consumers, arguing (1) consumers are not entitled

to a defect-free vehicle; (2) such disclosures would lead to the requirement to disclose

all potential defects; and (3) Ford can determine what is or is not relevant regarding

safety disclosures and consumers, like Mr. Kommer, should trust Ford to do the right

thing.  (*See, e.g.*, Mem in Supp. of Mot. to Dis. (Dkt. No. 12-1) at 4-6.)  In support of

these arguments, as it did in its initial motion to dismiss, Ford again cites to *Thiedemann*

*v. Mercedes-Benz USA, LLC*, 872 A.2d 783 (N.J. 2005), to two non-automotive cases,

*Neuser v. Carrier Corp.*, No. 06-C-645-S, 2007 U.S. Dist. LEXIS 9663 (W.D. Wis. Feb.

9, 2007) and *Munch v. Sears Roebuck & Co.*, No. 06 C 7023, 2007 U.S. Dist. LEXIS

62897 (N.D. Ill. Aug. 27, 2007), as well as to sections of the National Highway Traffic

Safety Act, 49 U.S.C. §§ 30116(a), 30118(c), & 30120(a).[2]  None of this authority is

persuasive or supports dismissal in this case.  Ford has no standing to rely upon any

statute, regulations or case law, relative to a warranty defense.  Inherent in that defense

is the notion that, given the opportunity, Ford would repair the vehicle free of charge.

Ford has amply demonstrated, five times over, its ingrained incapacity to repair this

---

[2] Ford also cites to "(Ex. A at 9.). (Mem in Supp. of Mot. to Dis. (Dkt. No. 12-1) at 5.)  "Ex. A" is the out-of-district case, *Darne v. Ford Motor Co.*, No. 13-CV-03594 (N.D. Ill, Sept. 1, 2017), but Ford appears to want to cite to the warranty that accompanied Mr. Kommer's vehicle.

vehicle.  The case law does not speak of a warranty defense for manufacturing a

defective vehicle, repeatedly failing to repair the defect, then telling the consumer that

Ford tried as hard as it could.  There is no talismanic concept of the word warranty,

absent that it must be co-extensive with the concept of repair.  Absent a repair, the word

warranty is devoid of meaning and contrary to the public policy protections afforded

legitimate warranty repairs.

Ford cites to *Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 784 (N.J.

2005) for the proposition that "defects can, and do, arise with complex instrumentalities

such as automobiles" and to *Munch v. Sears Roebuck & Co.*, No. 06 C 7023, 2007 U.S.

Dist. LEXIS 62897 (N.D. Ill. Aug. 27, 2007) for the proposition that "some percentage of

mass-produced complex machines will fail."  (Mem in Supp. of Mot. to Dis. (Dkt. No. 12-

1) at 4-5.)  But that misses the point.  Initially, the defect in the instant case is not part of

a "complex instrumentality" or "complex machine."  This is not a failure of a double

piston caliper on a computer modulated anti-lock brake system.  This is a defective door

latch.  It doesn't get more simple than that.  Further, Mr. Kommer is not seeking to hold

Ford accountable for Ford's failure to deliver a perfect vehicle (he knows Ford cannot do

that), but for Ford's failure to disclose known material defects.  *Neuser v. Carrier Corp.*,

No. 06-C-645-S, 2007 U.S. Dist. LEXIS 9663 (W.D. Wis. Feb. 9, 2007), a Wisconsin

case concerning whether there was an affirmative misrepresentation in a warranty

regarding a home furnace is inapposite and offers no insight into an omissions-based

claim.  Finally, Ford's reliance on various sections of the National Highway Traffic

Safety Act, 49 U.S.C. §§ 30116(a), 30118(c), & 30120(a) is misplaced.  Those sections

of the Act require a manufacturer to repurchase or repair a vehicle or equipment that

contains a defect related to motor vehicle safety and to, *inter alia*, notify consumers of

the defect.  *See id.*  But that statutory scheme does not absolve Ford of its requirement

to disclose material information to consumers, or require, or provide a basis for, the

dismissal of a Section 349 or 350 claim.

## **CONCLUSION**

For the foregoing reasons, Ford's motion to dismiss the FAC should be denied in

its entirety, together with such other and further relief as the Court deems just and

necessary.

Dated:    White Plains, New York
          October 3, 2017

Respectfully submitted,

/s Jeffrey I. Carton
DENLEA & CARTON LLP
Jeffrey I. Carton, Esq. (513238)
Robert J. Berg, Esq. (101139)
Myles K. Bartley, Esq. (519333)
2 Westchester Park Drive, Suite 410
White Plains, New York 10604
Telephone: (914) 331-0100
Facsimile: (914) 331-0105
jcarton@denleacarton.com
rberg@denleacarton.com
mbartley@denleacarton.com
