UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

BRANDON KOMMER on behalf of himself
and all others similarly situated,

      Plaintiff,

  -against-

FORD MOTOR COMPANY,

      Defendant.

Civil Action No.: 17-cv-296 LEK/DJS

---

## DECLARATION OF JEFFREY I. CARTON
### IN SUPPORT OF PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND PAYMENT OF AN INCENTIVE AWARD TO THE CLASS REPRESENTATIVE

I, Jeffrey I. Carton, declare as follows:

1.  I am a member of the law firm of Denlea & Carton LLP, Class Counsel in this Action. I respectfully submit this Declaration in support of Plaintiff Brandon Kommer's motion for an award of attorneys' fees and reimbursement of expenses to be paid to Class Counsel, and for an incentive award to be paid to Plaintiff Brandon Kommer as Class Representative. Defendant Ford Motor Company ("Ford") does not oppose this application.

2.  I make this Declaration based upon my personal knowledge and active involvement in the prosecution of this action over the past three and one-half years and a review of the files in my firm's possession. If called to testify, I could and would competently testify as to the matters contained herein.

3.  On or about May 4, 2020, the Court entered its Preliminary Approval Order, holding that "[t]he terms of the Settlement Agreement are sufficiently fair, reasonable and

1

adequate to allow dissemination of the Class Notice to the members of the Settlement Class." [Dkt. No. 58] In anticipation of the Final Approval ("Fairness") Hearing scheduled for December 2, 2020 at 10:30 am, and in accordance with the parties' Settlement Agreement, Plaintiff seeks an award of attorney's fees and reimbursement of expenses to Class Counsel in the aggregate amount of $1.3 million, and an incentive (service) award of $7,500 to Plaintiff Brandon Kommer.

## AN OVERVIEW OF THE SETTLEMENT

4.  This action concerns Ford's F-Series line of trucks and its door latch mechanism's failure to latch during or after freezing temperatures. After repeatedly experiencing a frozen door latch in his Ford F-150 truck's doors, and frustrated by Ford's inability to provide him with a permanent fix, Plaintiff filed this consumer class action seeking to redress for himself, and other similarly situated consumers, the vehicle's defect. The parties' proposed resolution is the hallmark of a fair, adequate, and reasonable compromise of sharply disputed claims, in which each side has been capably represented by zealous, well-informed counsel. Through Class Counsel's efforts, the settlement represents a very favorable result for the Class.

5.  The settlement provides for a common fund of $5.3 million from which: (i) consumers can recover their out-of-pocket costs associated with a door latch repair (up to $600 per consumer); and (ii) consumers who have merely been dissatisfied with the door latch's performance (but who have not incurred any out-of-pocket costs) can recover up to $10 per consumer. In addition, Ford has announced that it will continue to fix problematic door latches *at no cost* to consumers through October 31, 2028. And more importantly, unlike other "common fund" settlements in which unclaimed settlement proceeds revert to a Defendant, or are distributed to a *cy pres* recipient, here, *all* of the money in the settlement fund (apart from

notice and administration costs, attorneys' fees, and a proposed service award to Mr. Kommer) will be distributed to class members.

## PROCEDURAL HISTORY OF THE LITIGATION

6. Plaintiff filed his original Complaint against Ford on March 13, 2017, after having conducted a thorough investigation into the claims asserted. The extensive pre-complaint investigation included repeated discussions with Mr. Kommer, reviews of his documents and videos, research into similar complaints by other owners of the vehicles, communications with other class members regarding their experiences with door latch failure in freezing conditions and Ford's responses to their complaints, and research in the National Highway Traffic Safety Administration databases and other industry databases regarding the problem. The initial complaint alleged that under NY Gen. Bus. L. §§ 349 and 350, Ford affirmatively and by omission misrepresented the durability of its F-150 trucks in its advertisements. Plaintiff alleged a class action on behalf of himself and other New York purchasers or lessees of certain Ford F-150 series pickup trucks.

7. On April 12, 2017, Ford moved to dismiss the Complaint. The Court granted Ford's motion on July 28, 2017, and dismissed Plaintiff's affirmative misrepresentation claim with prejudice, but granted Plaintiff leave to amend his failure to disclose claim. *See Kommer v. Ford Motor Co.*, 2017 U.S. Dist. LEXIS, 118335, 1:17-CV-296(LEK)(DJS) (N.D.N.Y. Jul. 28, 2017).

8. Plaintiff filed his First Amended Complaint on August 8, 2017, again alleging violations of NY Gen. Bus. L. §§ 349 and 350. Specifically, Mr. Kommer contended that Ford failed to disclose to consumers that Plaintiff's F-150 model has defective door latches and locks that fail to latch or unlatch properly during or after freezing temperatures. Plaintiff's First

3

Amended Complaint alleged that Ford issued to its dealers a series of internal, proprietary Technical Service Bulletins ("TSBs"), describing the problem of "inoperative door latches during or after freezing temperatures" and proposing a potential remedy for the defect. These TSBs established that Ford was aware of the defect but failed to disclose it to current, former, or potential owners, purchasers, or lessees of these F-150 vehicles. The First Amended Complaint also alleged that a series of Safety Recalls and Customer Satisfaction Programs initiated by Ford demonstrated its awareness of the problem and its inability to provide a meaningful fix.

9. On September 13, 2017, Ford moved to dismiss the First Amended Complaint on the basis that (i) Plaintiff had not adequately alleged that Ford knew of the defect when he bought his truck; and (ii) manufacturers should not have to disclose every potential defect to consumers at the point of sale. On August 6, 2018, the Court denied Ford's motion, concluding that Mr. Kommer adequately alleged that the 2015 TSB creates a plausible inference that Ford, the TSB's author, knew of the defects in Plaintiff's F-150 when Mr. Kommer purchased the truck. *See Kommer v. Ford Motor Co.*, 2018 U.S. Dist. LEXIS 131499, 1:17-CV-296(LEK)(DJS) (N.D.N.Y. Aug. 6, 2018). The Court further concluded that Plaintiff had plausibly pled that Ford had exclusive knowledge about the door lock and latch defects, which were only disclosed to Ford dealerships and not to anyone outside the company. Finally, the Court rejected Ford's arguments that disclosing the door lock and latch defects would be unreasonably onerous and ineffective and that the need for disclosure was obviated by Ford's warranty agreement. *Id.*

10. Following the Court's denial of the motion to dismiss, Ford answered the complaint. The parties then met and conferred regarding case management and discovery issues, submitted a joint proposed case management schedule, and exchanged mandatory disclosures.

4

The parties appeared before the Hon. Magistrate Daniel J. Stewart for the initial Rule 16 conference. Judge Stewart then entered a case management order, and the parties began an arduous discovery process. Both parties served document requests and interrogatories. The parties engaged in contentious discussions about the propriety of certain discovery demands and protracted negotiations about the terms of a protective order governing confidential information. After the parties responded to each other's discovery demands, they held protracted discussions about the completeness of certain discovery responses and the production of relevant documents. Prior to reaching the settlement agreement, the parties had substantially completed written discovery.

11.  To date, the parties have propounded and responded to written discovery demands, and have produced in excess of 500,000 documents, along with initial disclosures and responses to interrogatories. Class Counsel reviewed Ford's massive document production, and prepared to take depositions of key Ford employees in advance of the discovery cut-off. In addition, Plaintiff was deposed on October 22, 2019.

12.  Besides discovery, the parties engaged in other motion practice. On March 27, 2019, Plaintiff filed a motion seeking leave to file a second amended complaint proposing to add four additional plaintiffs who purchased Ford F-150 vehicles and experienced the same frozen door latch defects as Plaintiff Kommer. The motion sought to add claims under Indiana, Pennsylvania, Ohio, and Arkansas consumer law. Ford objected to the motion on the ground that this Court lacked personal jurisdiction over Ford for the claims of those plaintiffs. On June 19, 2019, Magistrate Judge Stewart denied Plaintiff's motion, agreeing that the Court lacked personal jurisdiction over the claims which the new plaintiffs sought to assert in this action.

*Kommer v. Ford Motor Co.*, 2019 U.S. Dist. LEXIS 115018, 1:17-CV-296(LEK)(DJS) (N.D.N.Y. Jun. 19, 2019).

13. As deposition discovery was proceeding, the parties agreed to conduct mediation before a mutually acceptable mediator. The parties selected highly-regarded and experienced David Geronemus, Esq., under the auspices of JAMS, in New York City. Mr. Geronemus is widely recognized as one of the Country's most highly respected mediators, as reflected by his selection by multiple peer and professional advisory groups (including Chambers USA, Super Lawyers and Best Lawyers) for his excellence in alternative dispute resolution proceedings. The in-person mediation, attended by the clients and their attorneys, was held on November 26, 2019. At the end of a lengthy, arduous day of back-and-forth arm's length negotiations, ably assisted by Mediator Geronemus, the parties finally reached agreement on the key terms of this significant settlement.

14. Thus, after three years of contentious litigation, the parties agreed to settle this complex consumer class action on a nationwide basis. (In connection with doing so, Plaintiff filed a Second Amended Complaint to expand and define the scope of the settlement class to include each of the various Ford models that Plaintiff alleges is beset with an identical, common door latch defect). Plaintiff was prepared to litigate his claims through trial and appeal, and undertake further substantial discovery efforts against one of the world's largest automobile and truck manufacturers. Likewise, Ford was prepared to continue its aggressive defense against Plaintiff's claims at class certification and on the merits. Both parties, however, recognized the cost and risk of continuing litigation and the potential benefits of settlement, and after the extended and intensive arm's-length mediation in New York City on November 26, 2019, the parties were able to agree on a resolution to this action.

15. The parties then diligently prepared the Stipulation and Agreement of Settlement ("Settlement Agreement" and "Settlement"), and exhibits (including the Long Form and Short Form notices to settlement class members), which the parties executed on March 5, 2020.

## THE SETTLEMENT

16. Plaintiff and Defendant, by virtue of the foregoing, have conducted a thorough examination and investigation of the facts and law relating to the claims and defenses being prosecuted in this action. All of the terms of the Settlement Agreement are the result of extensive, adversarial, and arm's-length negotiations between experienced counsel for both sides.

**A. Available Relief Under the Settlement and the Claims Process**

*1. The Settlement Class and Class Vehicles*

17. As set forth in the Settlement Agreement, Plaintiff's counsel and Defendants' counsel negotiated a proposed Settlement Agreement that, if approved, will provide substantial benefits to the following Class:

> All entities and natural persons in the United States (including its Territories and the District of Columbia) who currently own or lease (or who in the past owned or leased) a Class Vehicle ("Settlement Class"). Excluded from the Settlement Class are: (1) all federal judges who have presided over this case and any members of their immediate families; (2) all entities and natural persons who delivered to Ford releases of all their claims; (3) Ford, its parents, subsidiaries, affiliates, officers, and directors; and (4) all entities and natural persons who submit a valid request for exclusion from the Settlement Class. "Class Vehicle(s)" means model year 2015-2018 Ford F-150 trucks and 2017-2018 Ford F-250, F-350, F-450, and F-550 trucks sold or leased in the United States, as well as model year 2019 Ford F-150, F-250, F-350, F-450, and F-550 trucks sold or leased in the United States that were built at Ford's Dearborn Assembly Plant before February 26, 2019, Ford's Kansas City Assembly Plant before March 4, 2019, Ford's Kentucky Assembly Plant before March 5, 2019, or Ford's Ohio Assembly Plant before March 11, 2019.

18. Plaintiff alleges that each of the vehicles in the Settlement Class suffers from the same, common Door Latch defect such that there is a unity of interest and common nucleus of operative facts in aggregating these vehicles in a single settlement class.

### 2. *The $5,300,000 Settlement Fund*

19. The Settlement provides for Ford to pay a total of $5,300,000 in cash to settle the Litigation. Ford will deposit the $5,300,000 in cash into a Qualified Settlement Fund ("QSF") which will fund the Settlement Fund. The Settlement Fund shall be used for the following purposes, as more fully described in the Settlement Agreement: (1) Reimbursement of Costs for Past Door Latch Repairs; (2) Reimbursement of Costs for Future Door Latch Repairs; (3) compensation for Dissatisfaction with Door Latch Performance; (4) Class Notice Costs; (5) Settlement Administration Costs; (6) residual payments to class members to the extent that there are residual amounts remaining; (7) Class Counsel's fees and expenses; and (8) a Service Award for the Named Plaintiff.

#### a. **Reimbursement of Costs of Past Door Latch Repairs**

20. Some owners or lessees of Class Vehicles who have experienced door latch issues on their affected Ford trucks have brought them into authorized Ford dealerships for servicing and have had repairs made under Ford's warranty programs at no direct cost to them for the repairs. In doing so, however, they may have incurred out-of-pocket towing charges or rental car charges in connection with those repairs. Likewise, other Settlement Class Members may have paid a service provider other than an authorized Ford dealer to perform a door latch repair, whether or not their Class Vehicles were or are still covered under a Ford warranty. The Settlement Agreement provides for reimbursement to such Settlement Class Members in connection with such repairs who provide adequate documentation of such costs in a properly

completed and timely claim filed with the Settlement Administrator. For a Settlement Class Member who has incurred such documented costs prior to the date of entry of the Preliminary Approval Order, that member may receive reimbursement of such out-of-pocket expenses, plus any associated rental car or towing charges, up to a maximum of $400 for all such Door Latch Repairs on a Class Vehicle.

### b. Reimbursement of Costs of Future Door Latch Repairs

21. The Settlement Agreement also provides opportunities to reimburse Settlement Class Members for out-of-pocket costs incurred in connection with future Door Latch Repairs. Settlement Class Members who, between the date of entry of the Preliminary Approval Order and one year thereafter, submit a timely, valid claim with supporting documentation showing they paid a service provider to perform one or more Door Latch Repairs to their Class Vehicle or paid out-of-pocket expenses for towing or a car rental in connection with a Door Latch Repair to their Class Vehicle may receive reimbursement up to a maximum of $200 for all such Door Latch Repairs on their Class Vehicle. However, to be eligible for this reimbursement, Settlement Class Members must have first obtained a Door Latch Repair from an authorized Ford dealer under the most current Door Latch Service Program applicable to their Class Vehicle prior to obtaining the Door Latch Repair on which the claim for reimbursement is based. These programs provide a free repair under warranty through October 31, 2028, and this requirement is designed to ensure the Settlement Class Members obtain the most current repair for free before paying to obtain an additional repair.

### c. Compensation for Dissatisfaction with Door Latch Performance

22. Settlement Class Members who timely submit a valid claim, attesting under penalty of perjury that prior to the date of entry of Preliminary Approval they experienced

9

dissatisfaction with Door Latch Performance, may receive a cash payment up to $10. Dissatisfaction with Door Latch Performance includes a Settlement Class Member experiencing at least one instance of door latch failure on their Class Vehicle such that the door does not open, does not close, or opens while driving, or having a concern that their Class Vehicle may in the future experience such door latch failure.

### d. Residual Distribution

23. After conclusion of the claims process, any funds that would remain following payment of the Class Notice Costs, Settlement Administration Costs, any Court-awarded attorneys' fees and expenses and any service award to the Named Plaintiff, and all valid claims for monetary compensation, will be distributed to all Original Owners or Lessees of a Class Vehicle that received one or more Door Latch Repairs as identified in Ford's Warranty Records and all Settlement Class Members who submitted a valid claim on a *per capita* basis. In the event the *per capita* amount of the residual payment would be less than five dollars, that amount will be distributed only to Settlement Class Members who submitted a valid claim. This provision ensures that the entire $5.3 million settlement fund benefits the Settlement Class, and that none of it reverts to Ford in the event of a low percentage of the Settlement Class submitting claims for monetary benefits.

## AN AWARD OF ATTORNEYS' FEES

24. As set forth more fully in the accompanying memorandum of law submitted in support of the instant application, it is well-settled that an award of attorneys' fees is appropriate to reward Class Counsel for their efforts expended over the past three and one-half years on a fully contingent basis.

25. Attached hereto as Exhibit A, is a true and correct copy of Denlea & Carton LLP's ("D&C's") contemporaneous time records (redacted to preserve attorney work product privilege) maintained in connection with this action, from inception through October 15, 2020. A summary chart setting forth the D&C attorneys who worked on this matter, their current hourly rates, and their total hours worked on this matter appears immediately below. These records reflect the Firm's hourly rates ($650.00 to $675.00 per hour), as well as the increments of time spent and tasks performed on behalf of the Class. Through October 15, 2020, D&C's total lodestar is $843,652.50. We note that subsequent to this filing, Class Counsel will expend additional time, primarily in connection with the anticipated Motion for Final Approval and the Final Approval Hearing itself, any possible appeal, as well as with the implementation of the settlement, which time will increase the lodestar and reduce the modest multiplier requested.

| Attorney | Hours | Rate | Lodestar |
| --- | --- | --- | --- |
| Jeffrey I. Carton | 279.65 | $675.00 | $188,763.75 |
| Robert J. Berg | 259.25 | $675.00 | $174,993.75 |
| Myles K. Bartley | 653.10 | $650.00 | $424.515.00 |
| Christopher D. Barraza | 85.20 | $650.00 | $ 55,380.00 |

26. The attorneys of Denlea & Carton LLP ("D&C" or Class Counsel") are highly qualified attorneys with extensive experience in complex litigation and consumer class actions. They bring to bear an expertise in consumer class actions that is rivaled by few firms in the Northeast. Many of the firm's attorneys graduated with honors from elite law schools and previously practiced at prominent New York firms. I am an honors graduate of Dartmouth

College and Columbia Law School, and previously practiced at Cravath, Swaine, and Moore. I served as one of the lead lawyers at my firm prosecuting the action.

27. My partner, Robert J. Berg, is an honors graduate of Amherst College. Mr. Berg received his J.D. and M.B.A. degrees from The University of Chicago. Mr. Berg, who has practiced law for the past thirty (30) years, began his legal career at Skadden, Arps, Slate, Meagher & Flom and LeBoeuf, Lamb, Leiby & MacRae in New York before joining plaintiffs' class action firms 23 years ago. Since 1990, Mr. Berg has limited his practice to the prosecution of class actions in the consumer fraud, security fraud, shareholder derivative, and antitrust fields.

28. Similarly, Myles Bartley graduated the United States Military Academy at West Point, and Boston College Law School and began his career with Curtis, Mellet-Prevost, Colt & Mosle. During his more than 20 years of practice, he has specialized in complex commercial litigation, including the prosecution of consumer class actions.

29. Attached hereto as Exhibit B is D&C's firm biography, which sets forth the considerable experience of D&C as Class Counsel in multiple class action litigations.

30. D&C's attorneys have been certified as class counsel and have prosecuted numerous class actions including:

- *Llanos v. Shell Oil Company And Shell Oil Products US*, No. SU-2006-009404 (N.Y. Sup. Ct.). State-wide class action alleging that Shell improperly imposed monthly inactivity or dormancy fees on Shell Gift Cards in violation of New York Gen. Bus. L. § 349 and Shell's contracts with its customers. The court certified the class and approved a settlement on March 31, 2010.

- *Argento v. Wal-Mart Stores*, No. 22850/06 (N.Y. Sup. Ct.). On October 2, 2009, the New York Appellate Division granted plaintiff's motion for certification of a state-wide class of consumers alleging that Sam's Club violated state consumer protection laws and its membership contracts by backdating membership renewals. The court subsequently approved a settlement in May, 2012.

- *Dupler v. Costco Wholesale Corporation*, Civ. No. 06-3141 (E.D.N.Y.). Class action alleging that Costco backdates membership renewals purchased after the

12

prior membership period's expiration date, in violation of state consumer protection laws and Costco's membership contracts. Class certification was granted on January 31, 2008 and a nationwide class settlement was approved on April 20, 2010.

- *In re Ticketmaster Sales Practices Litigation*, No. 09-0912 (C.D.Cal.). Court appointed Jeffrey I. Carton interim co-lead counsel pursuant to Federal Rule of Civil Procedure 23(g) on July 17, 2009. On February 13, 2012, the court granted final approval for a settlement.

- *In re Bayer Corp. Combination Aspirin Products Marketing and Sales Practices Litigation*, No. 09-2023 (E.D.N.Y.). The court appointed Jeffrey I. Carton to Plaintiff's Executive Committee in this Multidistrict Litigation in which plaintiffs allege that Bayer Healthcare LLC violated state consumer protection and warranty laws in connection with the deceptive marketing and sales of Bayer combination aspirin products.

- *Luks v. Empire Blue Cross/Blue Shield*, Index No. 03/64337 (N.Y. Sup. Ct. N.Y. Cty.). State-wide class action brought on behalf of more than 1,000 surgeons that compelled insurer to revoke its policy, commonly referred to as the "single incision" policy, of refusing to cover certain medically appropriate surgical procedures. The action was resolved on a class-wide basis, providing millions of dollars in reimbursement to New York physicians.

- *Breedlove v. Window Rock Ent., Inc.*, 04-00610 (Cal. Super. Ct. Orange Cty.). Consumer class action challenging false and deceptive advertising for the popular diet supplement CortiSlim. The case was resolved on a nationwide class basis.

- *Fox v. Cheminova, Inc.*, 00-5145 (E.D.N.Y.). Class action brought against pesticide manufacturer on behalf of commercial lobstermen on Long Island Sound, alleging destruction of lobster stock. The court certified the class and approved a settlement.

- *Dupler v. Old Navy LLC and The Gap, Inc.*, No. 06-008356 (N.Y. Sup. Ct., Nassau Cty.). Class action alleging consumers were short-changed when returning merchandise bought with store-issued coupons. On August 6, 2007, the court approved a settlement.

- *Aggarwal v. MagicJack LP*, No. 50 2011 CA 009521 (Fla. Cir. Ct. Palm Beach Cty.). Class action alleging consumers' renewal dates for internet telephone subscriptions were set unlawfully. A nationwide class action settlement was approved in February, 2012.

- *Lee v. Carter-Reed, et al.*, No. UNN-L-3969-04 (Superior Court, Union County, New Jersey). Class action alleging deceptive advertising in the sale of a weight-loss supplement. The case was certified as a class action (as ordered by the Supreme Court of the State of New Jersey), and eventually the case was resolved on a nationwide basis. The court provided its final approval of the class action settlement on April 2, 2015.

- *Jennings v. NBTY, Inc., et al.*, 11 CV 07972 (N.D. Ill.). Consumer fraud class action challenging false and deceptive advertising for glucosamine/chondroitin products. A nationwide settlement involving approximately 10 million consumers was approved on July 14, 2016.

- *Tyler v. Michaels Stores, Inc.*, 1:11-cv-10920 (D. Mass.). Court appointed co-lead counsel in class action challenging illegal collections of personal identification information during credit card transactions in violation of Massachusetts privacy law.

31. As the foregoing experiences reveal, the attorneys principally involved in this matter are experienced litigators, having litigated complex civil actions, including many class action and consumer fraud lawsuits throughout the country.

## SERVICE AWARD FOR NAMED PLAINTIFF

32. Finally, Class Counsel is also submitting an application to the Court for a $7,500 Service Award for the Named Plaintiff, Brandon Kommer. Ford agrees not to oppose this application. Mr. Kommer has been closely involved in every step of the Litigation, including the pre-complaint investigation, the discovery process, and the settlement. He provided discovery materials, including videos demonstrating the Door Latch problem on his Class Vehicle, and was deposed by Ford. Mr. Kommer also attended and participated in the full day mediation resulting in the successful settlement. He has expended considerable time and energy faithfully representing the Class in this Litigation, and should be rewarded for his exemplary service with this reasonable Service Award reflecting his contributions.

Dated: October 19, 2020
      White Plains, New York

                                                /s/ Jeffrey I. Carton
                                                Jeffrey I. Carton