UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

BRANDON KOMMER, on behalf of
himself and all others similarly situated,

                           Plaintiff,

        -against-                                            1:17-CV-0296 (LEK/DJS)

FORD MOTOR COMPANY,

                           Defendant.

_____

**MEMORANDUM-DECISION AND ORDER**

**I.      INTRODUCTION**

On March 13, 2017, Plaintiff Brandon Kommer commenced this action on behalf of

himself and similarly situated consumers, alleging that Defendant Ford Motor Company made

misrepresentations regarding defective door latches on F-Series pickup trucks. Dkt. No. 1

("Complaint"). On December 3, 2019, the parties indicated that they had reached a settlement,

Dkt. No 45. Subsequently, Plaintiff filed an unopposed motion for preliminary approval of a

proposed class action settlement. Dkt. Nos. 54–56. On May 4, 2020, the Court issued an order

granting Plaintiff's motion. Dkt. No. 58. On December 2, 2020, the Court held a fairness

hearing. See Dkt. No. 69 ("Fairness Hearing Transcript").

Before the Court are Plaintiff's unopposed motion for final approval of the class action

settlement, Dkt. Nos. 55 ("Settlement Agreement"); 66 ("Plaintiff's Memorandum of Law"); 67

("Defendant's Memorandum of Law"), and Plaintiff's unopposed motion for attorney's fees,

reimbursement of expenses, and payment of an incentive award, Dkt. No. 65 ("Fee Request").

For the reasons that follow, the Court grants both motions.

**II.     BACKGROUND**

Plaintiff brings this action on behalf of himself and a nationwide class of purchasers of F-Series Ford pickup trucks based on alleged misrepresentations regarding the trucks' door latches. Dkt. No. 52 ("Second Amended Complaint" or "SAC"). In his Second Amended Complaint, Plaintiff asserted a New York General Business Law ("GBL") § 349 deceptive acts and practices claim, a GBL § 350 false advertising claim, and parallel claims under the analogous deceptive acts and practices statutes of the 49 other states. SAC ¶¶ 75–91. Plaintiff alleges that door latches on several models of Ford pickup trucks sold and leased between 2015 and 2019 do not lock and latch properly when the temperature drops below freezing. Id. ¶ 2. Ford allegedly has long known about this problem, but has published advertisements for F-series trucks in various media that fail to mention the defect and has otherwise failed to disclose this information to consumers. Id. ¶¶ 3, 20, 29–37, 61–65.

Subsequent to a JAMS mediation session, the parties agreed to the key terms of a settlement agreement. See Pl.'s Mem. of Law. at 4–5. The Court briefly summarizes some of these terms below.

The class is defined as follows:

> All entities and natural persons in the United States (including its Territories and the District of Columbia) who currently own or lease (or who in the past owned or leased) a model year 2015-2018 Ford F-150 trucks and 2017-2018 Ford F-250, F-350, F-450, and F-550 trucks sold or leased in the United States, as well as model year 2019 Ford F-150, F-250, F-350, F-450, and F-550 trucks sold or leased in the United States that were built at Ford's Dearborn Assembly Plant before February 26, 2019, Ford's Kansas City Assembly Plant before March 4, 2019, Ford's Kentucky Assembly Plant before March 5, 2019, or Ford's Ohio Assembly Plant before March 11, 2019.

Id. (citing Settlement Agreement at § I(E), DD).

The settlement establishes a $5.3 million "Qualified Settlement Fund." Settlement Agreement § II(B)(1). The fund is to be used for the following purposes: (1) reimbursement of costs for past door latch repairs; (2) reimbursement of costs for future door latch repairs; (3) compensation for dissatisfaction with door latch performance; (4) class notice costs; (5) settlement administration costs; (6) residual payments to class members; (7) class counsel's fees and expenses; (8) service award for the named plaintiff. Id.

Payments will be disbursed in the following amounts: (1) settlement class members who incurred out-of-pocket expenses in connection with a door latch repair prior to the entry of the preliminary approval order may receive reimbursement of such costs up to $400. Id. § II(B)(2)(a); (2) settlement class members who incurred out-of-pocket expenses in connection with a door latch repair within one year after the preliminary approval order may receive reimbursement of such costs up to $200, so long as they first provided an authorized Ford dealer the opportunity to perform the most current door latch service program applicable to their class vehicle. Id. § II(B)(2)(b); (3) "Silent sufferers" who experienced a door latch malfunction but did not seek a repair are eligible for compensation of up to $10 for dissatisfaction with door latch performance if they attest that they experienced dissatisfaction with a door latch in their class vehicle and submit basic information to allow the settlement administrator to verify their ownership. Id. § II(B)(2)(c).

After the conclusion of the claims process, any remaining funds in the Qualified Settlement Fund following payment of attorney's fees, the named plaintiff incentive award, and costs of notice and settlement administration are to be distributed to class members who submitted a valid claim, as well as, more broadly, anyone who purchased or leased a class

vehicle from an authorized Ford dealer as identified in Ford's warranty records. Id. § I(V); II(B)(3).

Plaintiff's counsel has requested attorney's fees and expenses of $1,300,000, and a named plaintiff service award of $7,500. See Fee Request. Defendant consents to both. See Def.'s Mem. of Law at 9.

Separate from the settlement, since this case was filed, Ford has offered free repairs to certain vehicle owners under existing warranty coverage, in addition to creating an extended warranty program that provides free repair to any class vehicle that experiences a door latch problem through October 31, 2028. Def.'s Mem. of Law at 4–5; Fairness Hearing Tr. at 15.

## III.   LEGAL STANDARDS

Under Federal Rule of Civil Procedure 23, a class action cannot be settled without the approval of the district court. See Fed. R. Civ. P. 23(e). The district court must carefully scrutinize the settlement to ensure its fairness, adequacy, and reasonableness, see County of Suffolk v. Long Island Lighting, 907 F.2d 1295, 1323 (2d Cir. 1990) (citing Plummer v. Chemical Bank, 668 F.2d 654, 658 (2d Cir. 1982)), and that it was not a product of collusion, see Joel A. v. Giuliani, 218 F.3d 132, 138 (2d Cir. 2000). In performing this review, a court should examine both the procedural and the substantive fairness of the settlement. See D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001); In re MetLife Demutualization Litig., 689 F. Supp. 2d 297, 330 (E.D.N.Y. 2010) ("[T]he Court should consider both the process by which the settlement agreement was negotiated and the substantive fairness of the agreed-upon terms in light of the circumstances of the litigation.").

A court assesses procedural fairness by examining the "negotiating process, to ensure

4

that the settlement resulted from 'arm's-length negotiations and that plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests.'" D'Amato, 236 F.3d at 85 (quoting Weinberger v. Kendrick, 698 F.2d 61, 74 (2d Cir. 1982)).

A court assesses substantive fairness by examining the nine factors established by the Second Circuit in City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974): (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. D'Amato, 236 F.3d at 86 (internal quotation marks omitted); Melito v. Experian Mktg. Sols., Inc., 923 F.3d 85, 90 (2d Cir. 2019).

## IV.     DISCUSSION

The Court first assesses whether the settlement is fair, reasonable, and adequate, and then addresses Plaintiff's request for attorney's fees, expenses, and an incentive award. For the reasons that follow, the Court approves the settlement, as well as the requested attorney's fees, expenses, and incentive award.

### A.  Procedural Fairness

Here, there is no question that "the [s]ettlement is the product of arm's length

negotiations conducted by experienced counsel knowledgeable in complex class litigation[.]"
In re Austrian & German Bank Holocaust Litig., 80 F. Supp. 2d 164, 173 (S.D.N.Y. 2000).
Plaintiff's counsel is surely competent. See Fee Request Ex. A ¶¶ 27–31 (documenting
Plaintiff's counsel's firm's extensive experience in prosecuting consumer class actions and its
attorneys' elite education and work backgrounds). Moreover, the parties have engaged in
extensive discovery, including the production of over 500,000 documents, id. ¶ 11, which
afforded Plaintiff's counsel the opportunity to "thoroughly investigate[] the events and
transactions underlying Plaintiffs and the [c]lass [m]embers' claims." Moukengeshcaie v.
Eltman, No. 14-CV-7539, 2019 U.S. Dist. LEXIS 182337, at *17 (E.D.N.Y. Oct. 15, 2019).
Ultimately, the parties agreed to the major terms of this settlement subsequent to a mediation
session before an independent mediator, id. ¶ 13, whose involvement helped ensure that the
negotiations were free of collusion or undue pressure, see Moukengeshcaie, 2019 U.S. Dist.
LEXIS 182337, at *17.

A presumption of fairness attaches when, as here, a class settlement has been reached
after "arm's-length negotiations between experienced, capable counsel after meaningful
discovery." Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d 96, 116 (2d. Cir. 2005); see
also In re Austrian & German Bank Holocaust Litig., 80 F. Supp. 2d at 173. The Court thus
finds that the process leading to the settlement was procedurally fair.

**B. Substantive Fairness**

*1. Complexity, Expense, and Likely Duration of the Litigation*

Given the lengthy pendency of this case so far and the significant discovery and litigation that likely lies ahead, this factor supports settlement approval. This case was filed almost four years ago. Docket. While the parties have conducted significant discovery, additional discovery would be necessary absent settlement, including depositions of Ford witnesses and possibly depositions of experts. See Pl.'s Mem. of Law at 14. Moreover, the parties still would have to litigate certification, which likely would involve complex factual and legal issues. One can imagine, for instance, various commonality and predominance issues arising under Fed. R. Civ. P. 23, given that Plaintiff represents a nationwide class of consumers asserting claims under many different state statutes, and that only some class members live in cold climates in which the alleged door latch malfunction is likely to manifest, see Fairness Hearing Tr. at 10–11. Additionally, Defendant likely would move for summary judgment, which would entail myriad disagreements over a complex factual record.

It is surely rational from the perspective of absent class members to obtain compensation now rather than endure years of further litigation over these issues. City of Providence v. Aeropostale, Inc., No. 11-CV-7132, 2014 WL 1883494, at *5 (S.D.N.Y. May 9, 2014) (finding that "[e]ven if the Class could recover a judgment at trial, the additional delay through trial, post-trial motions, and the appellate process, could prevent the Class from obtaining any recovery for years"); Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini, 258 F. Supp. 2d 254, 261 (S.D.N.Y.2003) ("[E]ven if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would in light of the time value of money, make future recoveries less valuable than this current recovery.").

7

### 2. Reaction of Class to Settlement

Among 3,279,162 class members provided direct notice by first class mail, none have objected. Pl.'s Mem. of Law at 20. And only 172 class members have submitted valid opt-out requests. See id. Both of these facts indicate that the settlement is substantively fair. See, e.g., Massiah v. MetroPlus Health Plan, Inc., No. 11-CV-5669, 2012 WL 5874655, at *4 (E.D.N.Y. Nov. 20, 2012) ("'The fact that the majority of class members neither objected nor opted out is a strong indication' of fairness.") (quoting Wright v. Stern, 553 F. Supp.2d 337, 343–45 (S.D.N.Y. 2008)).

### 3. The Stage of the Proceedings and Amount of Discovery Completed

The action has progressed sufficiently to permit counsel to develop "an adequate appreciation of the merits of the case before negotiating." In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 537 (3d Cir. 2004); see also In re Bear Stearns Co. Sec. Derivative and ERISA Litig., 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012) ("[T]he question is whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiff's causes of action for purposes of settlement."). As discussed, while discovery is by no means complete, over half a million documents have already been produced. And Kommer has been deposed. Pl.'s Mem. of Law at 4. Moreover, there has been significant motion practice, through which Ford has achieved some victories, including dismissal of Kommer's affirmative misrepresentation claim. See Dkt. No. 10.

### 4. Litigation Risks

Plaintiff faces non-trivial obstacles in establishing liability and damages and in

maintaining the class through trial. For instance, as Defendant emphasizes, discovery revealed that a small minority of vehicles obtained a door latch repair while the vehicle was under warranty, which suggests that many F-series pickup trucks do not have the defect at issue, or perhaps that the defect only manifests under rare conditions. See Def.'s Mem. of Law at 11. This could have some bearing on whether the alleged omission was material, or, at least, on whether the omission was material to all class members for purposes of F.R.C.P. 23(b)(3)'s predominance requirement. See, e.g., Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 26 (N.Y. 1995) ("In the case of omissions in particular . . .[GBL § 349] surely does not require businesses to ascertain consumers' individual needs and guarantee that each consumer has all relevant information specific to its situation."); Stearns v. Ticketmaster Corp., 655 F.3d 1013, 1022–23 (9th Cir. 2011) (noting in reference to actions under the California Consumer Legal Remedies Act that "[i]f the . . . omission is not material as to all class members, the issue of reliance would vary from consumer to consumer and the class should not be certified") (internal quotation marks omitted). Moreover, the fact that Ford has already repaired many class members' door latches for free and has pledged to continue providing free repairs to many class members, would complicate Plaintiff's effort to establish class-wide damages.

In light of these considerations, victory was far from certain, which indicates that absent class members are well-served by the settlement of their claims at this stage.

### 5. Ford's Ability to Withstand a Greater Judgment

The parties agree that Ford is able to pay a substantially larger judgment. See Pl's Mem.

of Law at 19; Def.'s Mem. of Law at 15. But by itself, this fact has little significance. See, e.g.,

In re Austrian and German Bank Holocaust Litigation, 80 F. Supp. 2d at 178 (noting that

"defendant's ability to withstand a greater judgment, standing alone, does not suggest that the

settlement is unfair"); In re Initial Pub. Offering Sec. Litig., 671 F. Supp. 2d 467, 487

(S.D.N.Y. 2009) ("Just because a defendant is capable of making a larger payment does not

mean that the settlement is inadequate.").

### 6. *Range of Reasonableness of Settlement Fund*

"There is a range of reasonableness with respect to a settlement—a range which

recognizes the uncertainties of law and fact in any particular case and the concomitant risks and

costs necessarily inherent in taking any litigation to completion." Wal-Mart Stores, 396 F.3d at

119 (quoting Newman v. Stein, 464 F.2d 689, 693 (2d Cir. 1972)). "[T]he question for the

Court is not whether the settlement represents the highest recovery possible . . . but whether it

represents a reasonable one in light of the many uncertainties the class faces[.]" In re Citigroup

Inc. Sec. Litig., 965 F. Supp. 2d 369, 384 (S.D.N.Y. 2013).

Given that this is a nationwide class, and that there are reportedly over three million

class vehicles, Fairness Hearing Tr. At 10, a $5.3 million settlement is not self-evidently

substantial. Nevertheless, it is a reasonable recovery, in light of the uncertainties the class

faces. As noted, there is some reason to believe that most class vehicles experienced no door

latch malfunction. And many class members who have been affected by a door latch defect

have already received free repairs from Ford, or will receive repairs under the extended

warranty. For reasons mentioned, these facts tend to undermine Plaintiff's claims and the

viability of the class.

The Settlement Agreement takes these uncertainties into account, by imposing eligibility requirements that restrict recovery to those who have experienced door latch issues that required repair; those class vehicle owners who cannot prove that they have paid for repairs, the "silent sufferers," are entitled only to nominal compensation. The settlement amount, in other words, adequately compensates those F-series vehicle owners who have actually experienced economic harm. And those who have not are, in any case, likely eligible for free repairs. Moreover, given that residual funds are redistributed to class vehicle owners, some class members ultimately may be overcompensated for their injury. All things considered, the Settlement Agreement provides a substantial recovery efficiently targeted at the most deserving consumers.

### C. Attorney's Fees and Expenses

Plaintiff's counsel requests $1.3 million in attorney's fees. Federal courts have long recognized that a lawyer whose efforts create a common fund may recover a reasonable fee from the fund as a whole. See Central States Southeast & Southwest Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC, 504 F.3d 229, 249 (2d Cir. 2007) ("[U]under the 'equitable fund' doctrine, attorneys for the successful party may petition for a portion of the fund as compensation for their efforts[.]") (citing Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980)).

"Courts may examine attorney's fees in class-action settlements based on either a lodestar calculation, which examines the hours worked and rates charged, or a percentage of the total class recovery." Seekamp v. It's Huge, Inc., No. 09-CV-18, 2014 U.S. Dist. LEXIS 174657, at *3 (N.D.N.Y. Dec. 18, 2014) (Kahn, J.). But "the trend in this Circuit is to award

11

fair and reasonable fees using the percentage of recovery method." Kirby v. FIC Rest., Inc.,
No. 19-CV-1306, 2020 U.S. Dist. LEXIS 178109, at *12 (N.D.N.Y. Sept. 28, 2020) (collecting
cases).

The reasonableness of a proposed fee should be scrutinized under the Goldberger
factors:

(1) the time and labor expended by counsel;

(2) the magnitude and complexities of the litigation;

(3) the risk of the litigation . . . ;

(4) the quality of representation;

(5) the requested fee in relation to the settlement; and

(6) public policy considerations.

Wal-Mart Stores, 396 F.3d at 121 (quoting Goldberger v. Integrated Res., Inc., 209 F.3d 43, 50
(2d Cir. 2000)).

The Court has discussed several of these factors already in its Grinnell Analysis. As
noted, Plaintiff's counsel has expended time and resources on substantial discovery and motion
practice over nearly four years of litigation, and significant expense and risk attends the further
prosecution of this case. Moreover, the requested fee, which is about twenty-five percent of the
common fund, is a relatively low proportion of the total recovery. See Velez v. Novartis
Pharms. Corp., No. 04-CV-9194, 2010 U.S. Dist. LEXIS 125945, at *59 (S.D.N.Y Nov. 30,
2010) ("District courts in the Second Circuit routinely award attorneys' fees that are 30 percent
or greater."). And "public policy militates in favor of the fee in light of the role that consumer
protection class actions play in regulating the marketplace." Seekamp, 2014 U.S. Dist. LEXIS

174657, at *5.

Turning to expenses, the Court finds that the $13,291 requested as part of the $1.3 million total is eminently reasonable given the lengthy pendency of this case. See Jermyn v. Best Buy Stores, L.P., No. 08-CV-214, 2012 WL 2505644, at *9 (S.D.N.Y. June 27, 2012) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation of those clients.").

Accordingly, the Court approves Plaintiff's requested attorney's fees and expenses.

**D. Incentive Award**

Plaintiff requests a $7,500 named plaintiff incentive award. "Incentive awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant and any other burdens sustained by the plaintiffs." Babcock v. C. Tech Collections, Inc., No. 14-CV-3124, 2017 WL 1155767, at *9 (E.D.N.Y. Mar. 27, 2017). Over the past several years, Kommer has performed significant work on behalf of the class, including providing video and other evidence, traveling several hours by car to attend a deposition, and participating in a mediation session. See Fee Request at 23. Moreover, the requested award is well within the normal range for consumer fraud cases. See, e.g., Moukengeshcaie v. Eltman, No. 14-CV-7539, 2020 U.S. Dist. LEXIS 71018, at *20-21 (E.D.N.Y. Apr. 21, 2020) (awarding $15,000 in an Fair Debt Collection Practices Act suit in which the named plaintiff had regularly communicated with class counsel and attended a settlement conference); Dornberger v. Metro. Life Ins. Co., 203 F.R.D. 118, 124–25 (S.D.N.Y.

2001) (awarding $10,000 in an insurance-related consumer fraud action in which the named

plaintiff had regularly communicated with class counsel, provided documents and other

information, participated in a deposition, and contributed to the settlement).

Accordingly, the Court approves a $7,500 incentive award for Kommer.

## V.    CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:[1]

1.    The prior conditional certification of the Settlement Class is hereby confirmed

and made final for purposes of the Settlement Agreement as approved by this Memorandum-

Decision and Order. The Settlement Class is defined as:

> All entities and natural persons in the United States (including its
> Territories and the District of Columbia) who currently own or lease
> (or who in the past owned or leased) a model year 2015-2018 Ford
> F-150 trucks and 2017-2018 Ford F-250, F-350, F-450, and F-550
> trucks sold or leased in the United States, as well as model year
> 2019 Ford F-150, F-250, F-350, F-450, and F-550 trucks sold or
> leased in the United States that were built at Ford's Dearborn
> Assembly Plant before February 26, 2019, Ford's Kansas City
> Assembly Plant before March 4, 2019, Ford's Kentucky Assembly
> Plant before March 5, 2019, or Ford's Ohio Assembly Plant before
> March 11, 2019.
>
> Excluded from the Settlement Class are: (1) all federal court judges
> who have presided over this case and any members of their
> immediate families; (2) all entities and natural persons who
> delivered to Ford releases of all their claims; (3) Ford, its parents,
> subsidiaries, affiliates, officers and directors; and (4) all entities and
> natural persons who submitted a valid request for exclusion from
> the Settlement Class.

2.    The Court hereby appoints Named Plaintiff Brandon Kommer to serve as Class

---

[1] All capitalized terms used in the paragraphs below have the meanings defined in the
Settlement Agreement.

Representative.

3.      The Court hereby finds that the Class Notice was the best practicable notice under the circumstances, and has been given to all Settlement Class Members known and reasonably identifiable in full satisfaction of the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process.

4.      The Court hereby approves the terms of the Settlement Agreement as fair, reasonable, and adequate as it applies to the Settlement Class, and directs consummation of all its terms and provisions.

5.      The Court awards a Service Award to the Class Representative of $7,500.00 to be paid from the Qualified Settlement Fund.

6.      The Court awards Class Counsel $1,300,000.00 in combined fees and expenses to be paid from the Qualified Settlement Fund.

7.      The Settlement Agreement shall be binding on Ford and all Settlement Class Members, including all members of the Settlement Class who have not been excluded pursuant to the Settlement Agreement.

8.      The Court dismisses on the merits and with prejudice Brandon Kommer v. Ford Motor Company, 1:17-CV-00296-LEK-DJS, pending in the United States District Court for the Northern District of New York.  In addition, the Court also dismisses all claims which any Settlement Class Members alleged or could have alleged in any complaint, action, or litigation based upon an alleged Door Latch malfunction in the Class Vehicles.

9.      Upon the Effective Date of the Settlement, the Named Plaintiff, and each Settlement Class Member shall be deemed to have released, waived, and discharged Ford

Motor Company, its past or present directors, officers, employees, partners, principals, agents, heirs, executors, administrators, successors, reorganized successors, subsidiaries, divisions, parents, related or affiliated entities, Authorized Ford Dealers, underwriters, insurers, co-insurers, re-insurers, licensees, divisions, joint ventures, assigns, associates, attorneys, and controlling shareholders from any and all other claims, demands, actions, causes of action of any nature whatsoever that relate to an alleged Door Latch malfunction in a Class Vehicle, including but not limited to any claim for violations of federal, state, or other law (whether in contract, tort, fraud, consumer protection, or otherwise, including statutory and injunctive relief, common law, property, warranty, Lemon Law, and equitable claims), and also including Unknown Claims that were or could have been asserted against the Released Parties in the Litigation, or in any other complaint, action, or litigation in any other court or forum based on a Door Latch malfunction in the Class Vehicles. Excluded from the Released Claims are claims seeking damages for an alleged personal injury caused by an alleged Door Latch malfunction in a Class Vehicle.

10.     All members of the Settlement Class who did not duly request exclusion from the Settlement Class in the time and manner provided in the Class Notice are hereby barred, permanently enjoined, and restrained from commencing or prosecuting any action, suit, proceeding, claim, or cause of action in any jurisdiction or court against Ford or any of the other entities or persons who are to be discharged as noticed above in Paragraph 9, based upon, relating to, or arising out of, any of the matters which are discharged and released pursuant to Paragraph 9 hereof.  Identification information about Settlement Class Members who effectively excluded themselves from the Class is attached as Exhibit A to this Order.

11.    If either (a) the Effective Date of Settlement does not occur for any reason whatsoever, or (b) the Settlement Agreement becomes null and void pursuant to the terms of the Settlement Agreement, this Memorandum-Decision and Order shall be deemed vacated and shall have no force or effect whatsoever.

12.    Without affecting the finality of the Memorandum-Decision and Order in any way, the Court reserves continuing and exclusive jurisdiction over the parties, including all members of  the Settlement Class as defined above, and the execution, consummation, administration, and enforcement of the terms of the Settlement Agreement.

13.    The Clerk of the Court will serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

DATED:      December 1:
Albany, New

Lawrence E. Kahn
U.S. District Judge

17